# In re Awat Mengisteab BAHTA, Respondent

## File A25 305 035 - Eloy

*Decided October 4, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The respondent's conviction for attempted possession of stolen property, in violation of sections 193.330 and 205.275 of the Nevada Revised Statutes, is a conviction for an attempted "theft offense (including receipt of stolen property)," and therefore an aggravated felony, within the meaning of sections 101(a)(43)(G) and (U) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(G) and (U) (Supp. IV 1998).

(2) The Immigration and Naturalization Service retains prosecutorial discretion to decide whether or not to commence removal proceedings against a respondent subsequent to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546.

Jason R. Bartlett, Esquire, Phoenix, Arizona, for respondent

Carmel J. Fisk, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; HEIL-MAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, and MOSCATO, Board Members. Dissenting Opinion: ROSENBERG, Board Member, joined by SCHMIDT, Chairman; VILLAGELIU, GUENDELSBERGER, and MILLER, Board Members.[1]

HOLMES, Board Member:

The Immigration and Naturalization Service appeals from an Immigration Judge's July 1, 1999, decision, which found that the respondent's conviction for attempted possession of stolen property was not a conviction for an aggravated felony and terminated removal proceedings. The appeal will be sustained, and the record will be remanded for further proceedings.

---

[1]Fred W. Vacca, Board Member, participated in the deliberations concerning this case, but retired prior to the issuance of the final decision. Noel A. Brennan, Cecelia M. Espenoza, and Juan P. Osuna, Board Members, did not participate in this decision.

## I. ISSUE ON APPEAL

The issue in this case is whether the respondent's Nevada conviction for attempted possession of stolen property is a conviction for an attempted "theft offense (including receipt of stolen property)" within the definition of an aggravated felony set forth in section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (Supp. IV 1998).

## II. FACTS

The Service charged that the respondent is subject to removal from the United States under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. IV 1998), as an alien convicted of an aggravated felony. The charge was based on the respondent's February 6, 1997, conviction for attempted possession of stolen property, in violation of sections 193.330 and 205.275 of the Nevada Revised Statutes, for which he received a suspended 36-month sentence to confinement. The Immigration Judge determined that this conviction was not a conviction for an aggravated felony as that term is defined in section 101(a)(43)(G) of the Act, because it failed to "establish the elements of 18 U.S.C. § 2315," a federal provision criminalizing sale or receipt of stolen goods. Accordingly, the Immigration Judge terminated the proceedings. The Service appealed from this decision.

## III. THEFT (INCLUDING RECEIPT OF STOLEN PROPERTY)

### A. Relevant Authority

The Nevada "Buying or Receiving Stolen Goods" criminal provision under which the respondent was convicted provides, in pertinent part, as follows:

Offense involving stolen property: Definition; penalty; restitution; prima facie evidence; determination of value of property.

1. A person commits an offense involving stolen property if the person, for his own gain or to prevent the owner from again possessing his property, *buys, receives, pos-*

---

[2]The Immigration Judge also terminated the proceedings on the ground that the Service failed to demonstrate that the respondent's refugee status had been terminated after notice and hearing. The record indicates, however, that the respondent adjusted his status to that of a lawful permanent resident on November 4, 1982. The respondent's former status as a refugee, therefore, does not provide a basis for terminating the proceedings.

*sesses or withholds property*:

(a) Knowing that it is stolen property; or

(b) Under such circumstances as should have caused a reasonable person to know that it is stolen property.

Nev. Rev. Stat. § 205.275(1) (1997) (emphasis added).[3]

Section 101(a)(43)(G) of the Act classifies as an aggravated felony "*a theft offense (including receipt of stolen property)* or burglary offense for which the term of imprisonment [is] at least 1 year." (Emphasis added.)

## B. Arguments on Appeal

The Service argues on appeal that a state offense need not necessarily match the elements of an analogous federal offense to be adjudged an aggravated felony under section 101(a)(43) of the Act. Although some of the subdivisions of the aggravated felony definition specifically refer to federal definitions of offenses, the Service notes that the description of theft and burglary offenses at section 101(a)(43)(G) contains no explicit reference to a federal definition or statute. The Service argues that the term "theft" has been broadly construed under Nevada law and the law of other jurisdictions to include both receipt and possession of stolen property. The Service notes further that the definitions in section 101(a)(43) apply to an offense "whether in violation of Federal or State law." Section 101(a)(43) of the Act.

The respondent contends that his Nevada conviction for attempted possession of stolen property is not an aggravated felony under section 101(a)(43)(G) because it does not satisfy a uniform federal definition of that crime, as embodied in an analogous federal statute, 18 U.S.C. § 2315 (1994). He also argues that his conviction is not for an aggravated felony because possession of stolen property is not a "theft offense" and falls short of "receipt of stolen property."

The respondent acknowledges that some state criminal codes now include all receipt and possession offenses under the broad heading of "theft offenses," but he argues that we should read the parenthetical, "including receipt of stolen property," as an indication that Congress drew the line on

---

[3]The respondent was convicted of an attempt offense under section 193.330 of the Nevada Revised Statutes, which provides that "(a)n act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime." Nev. Rev. Stat. § 193.330 (1997). The respondent's failure to accomplish the possession does not affect his status as an aggravated felon, as section 101(a)(43)(U) of the Act provides that "an attempt or conspiracy to commit an offense described in this paragraph" constitutes an aggravated felony.

aggravated felony theft offenses at receipt of stolen property as that offense has historically been defined.

The respondent notes that receipt of stolen property has been distinguished from possession of stolen property, in that the receipt offense generally required proof that the perpetrator had knowledge, *at the time of receipt*, that the property was stolen. *See, e.g.*, *Lewis v. Hudspeth*, 103 F.2d 23 (10th Cir. 1939) (stating that different proof is required to convict under former 18 U.S.C. § 101 depending upon whether the charge was for retaining stolen property or receiving and concealing stolen property); *People v. Allen*, 96 N.E.2d 446 (Ill. 1950) (noting that a conviction for receiving stolen property requires proof that the receiver knew the property was stolen at the time he received it); *see also Williams v. State*, 154 S.W.2d 809 (Ark. 1941)*; State v. Lisena*, 30 A.2d 593 (N.J. 1943); *Reade v. State*, 236 S.W.2d 798 (Tex. Crim. App. 1951). The respondent raises two additional constitutional arguments, to "preserve them, if necessary, for appeals."

## C. Discussion

The issue in this case turns on the meaning of the phrase, "a theft offense (including receipt of stolen property)" in section 101(a)(43)(G) of the Act. Does inclusion of the parenthetical mean, as the respondent argues, that Congress only intended to include within the scope of theft offenses a receipt of stolen property crime that meets the historical elements of that distinct offense? Or is the parenthetical properly read as incorporating into the term "theft" the more contemporary understanding of "receipt of stolen property" offenses?

The respondent pled guilty to "attempt[ed] possession of stolen property." In so doing, he admitted the charges in Count II of his Criminal Complaint, that attempted "wilfully, unlawfully, and feloniously, for his own gain, [to] possess property [he] . . . knew, or had reason to believe, had been stolen." Although the Nevada statute defines four ways in which the section 205.275 offense may be committed (i.e., buying, receiving, possessing, or withholding), the respondent was charged and convicted only of attempted possession.[4]

The respondent argues that a federal uniform standard should be applied in determining whether a conviction is for a "theft offense" under section 101(a)(43)(G) of the Act. In this regard, he urges that we recognize the elements of the federal statute at 18 U.S.C. § 2315 as the bench-

---

[4]An understandable line can be drawn, in an historical sense, between the offense of possession of stolen property and the offense of receipt of stolen property. It is more difficult to comprehend an *attempt* to possess stolen property that would not also be an *attempt* to receive such property.

mark for identifying theft offenses under section 101(a)(43)(G). Section 2315 provides, in pertinent part, punishment for anyone who "receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, . . . knowing the same to have been stolen, unlawfully converted, or taken." 18 U.S.C. § 2315.

The respondent identifies two differences in the elements that are required for a conviction under section 205.275 of the Nevada Revised Statutes and for a conviction under 18 U.S.C. § 2315. Under the federal statute, an individual may be convicted of felony possession of stolen property only if the property is worth more than $5,000; under the Nevada statute, the stolen goods must only be worth more than $2,500. In addition, the federal statute requires actual knowledge, whereas the Nevada statute requires either actual knowledge or evidence demonstrating that a reasonable person would have realized that the goods had been stolen. Because of such differences, the respondent argues that the Nevada statute under which he was convicted falls short of the federal standard for a "theft offense" as defined in section 101(a)(43)(G) of the Act.

We have recognized the importance of a categorical approach to defining crimes constituting aggravated felonies in order to assure uniform treatment from state to state. *See, e.g.*, *Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999); *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995). We do not find, however, that 18 U.S.C. § 2315 provides a definitive benchmark for determining the scope of what constitutes a "theft offense" under section 101(a)(43)(G). Unlike some provisions of section 101(a)(43) that refer to federal statutes in defining particular crimes as aggravated felonies, section 101(a)(43)(G) contains no reference to 18 U.S.C. § 2315 or to any other federal statutory provision defining the term "theft." In our recent decision in *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991 (BIA 1999), we noted that, in defining the term "sexual abuse of a minor," "we are not obliged to adopt a federal or state statutory provision." *Id*. at 5.

The aggravated felony provision at issue in *Matter of Rodriguez-Rodriguez*, like the one in this case, contains no explicit reference to a federal provision. In that case, we looked to the relevant provisions of federal law "as a guide in identifying the types of crimes we would consider to be sexual abuse of a minor." *Id.* Similarly, although we may look in this case to 18 U.S.C. § 2315 for some guidance as to the types of crimes that are theft offenses or receipt of stolen property offenses, we do not find that the monetary amounts or the particulars of the knowledge requirement set forth in that federal statute were meant to be incorporated into the definition of a "theft offense" in section 101(a)(43)(G) of the Act.[5] These differences between 18 U.S.C. § 2315 and the pertinent Nevada state law do not resolve

the issue before us.

The determinative issue in this case is whether the respondent's state conviction for attempted possession of stolen property is a "theft offense" as defined in section 101(a)(43)(G). *See Matter of Sweetser*, 22 I&N Dec. 709 (BIA 1999); *see also Matter of Rodriguez-Rodriguez, supra*. We find that a review of the categorization of theft offenses that appears in the United States Code, the various state codes, and the Model Penal Code provides guidance to the most reasonable reading of the phrase "theft offense (including receipt of stolen property)" in section 101(a)(43)(G) of the Act.

### 1. Theft and Receiving Stolen Property as a Federal Offense

There are various federal criminal provisions relating to theft and stolen property, which are principally included in Chapter 31 ("Embezzlement and Theft") and Chapter 113 ("Stolen Property") of Title 18 of the United States Code.

Section 641 of Chapter 31 makes it a criminal offense to embezzle, steal, purloin, or knowingly convert United States Government property or to receive, conceal, or retain the same with intent to convert it to one's own gain. 18 U.S.C. § 641 (1994).[6] Retention of stolen Government property is an offense under this theft provision.

Section 662 of Chapter 31, entitled "Receiving stolen property within special maritime and territorial jurisdiction [of the United States]," provides as follows:

> Whoever, within the special maritime and territorial jurisdiction of the United States, buys, receives, or conceals any money, goods, bank notes, or other thing which may be the subject of larceny, which has been feloniously taken, stolen, or embezzled, from any other person, knowing the same to have been so taken, stolen, or embezzled, shall [be subject to penalty].

18 U.S.C. § 662 (Supp. II 1996). Thus, buying, receiving, and concealing stolen property all are offenses under section 662, but neither possession nor retention of such property is a proscribed offense. *Id.*

As noted, Chapter 113 of the United States Code sets out various federal "stolen property" offenses. Section 2313 of Title 18, entitled "Sale or receipt of stolen vehicles," applies to the following:

---

[5]We note that the actual knowledge requirement in 18 U.S.C. § 2315 may be established by circumstantial evidence. *See Pearson v. United States*, 192 F. 2d 681 (6th Cir. 1951).

[6]This section "was enacted in 1948, as a consolidation of four former sections of Title 18, . . . which in turn were derived from two sections of the Revised Statutes." *Morissette v. United States*, 342 U.S. 246, 265 (1952). *Morissette* includes a discussion of some of the legislative history of section 641 and its antecedents, and notes in part as follows: "The history of § 641 demonstrates that it was to apply to acts which constituted larceny or embezzlement at common law and also acts which shade into those crimes but which, most strictly considered, might not be found to fit their fixed definitions." *Id.* at 266 n.28.

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, . . . knowing the same to have been stolen.

18 U.S.C. § 2313(a) (1994). Possession of stolen vehicles was added in 1984 to the list of offenses in section 2313 by section 203 of the Motor Vehicle Theft Law Enforcement Act of 1984, Pub. L. No. 98-547, 99 Stat. 2754, 2770.[7] Section 203, which inserted "possesses" after "receives" in 18 U.S.C. § 2313, was captioned "Sale or receipt of stolen motor vehicles." *Id.* Thus, this "sale or receipt" section of Title 18 includes within its scope the possession, concealment, and storage of stolen vehicles. Moreover, the section was amended in 1984 in a manner that reflects that Congress has used the term "receipt" of stolen property in a generic sense to include a broader category of offenses than "receipt of stolen property" in its narrowest historical meaning.

Similarly, section 2315 of Title 18, entitled "Sale or receipt of stolen goods, securities, moneys, or fraudulent State tax stamps," applies to the following:

> Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, . . . knowing the same to have been stolen, unlawfully converted, or taken.

18 U.S.C. § 2315 (1994). Possession of stolen goods was added in 1986 to the list of offenses in section 2315. *See* Criminal Law and Procedure Technical Amendments Act of 1986, Pub. L. No. 99-646, § 76, 100 Stat. 3592, 3618.

The respondent argues that the fact that possession of stolen property was added to 18 U.S.C. § 2315 in 1986 reflects that Congress understood the distinction between receipt and possession of stolen property. He further asserts that this supports the view that the distinction was intended to be carried forward in the parenthetical that appears in section 101(a)(43)(G) of the Act. We find, however, that the inclusion of "possession," along with "concealment" and "storage," in federal "receipt" of stolen property provisions instead supports the view that Congress has understood and used the term "receipt" in a broader sense than that propounded by the respondent.[8].

The federal provisions defining theft and receipt of stolen property do not provide a conclusive answer regarding the intended scope of the

---

[7]This amendment may have been a response to court decisions holding that a conviction for receipt of stolen property would require proof of knowledge at the time of receipt that the property was stolen. *See, e.g.*, *United States v. Strauss*, 678 F.2d 886, 891 n.8 (11th Cir. 1982), and cases cited therein.

"receipt of stolen property" parenthetical in section 101(a)(43)(G) of the Act. On the one hand, 18 U.S.C. § 662, entitled "Receiving stolen property," references only receipt and concealment offenses, but not the possession or retention of stolen property. On the other hand, the remaining principal federal stolen property offenses reflect a broader understanding of "theft" and "receipt" of stolen property crimes, and the amendments to 18 U.S.C. §§ 2313 and 2315 indicate an intent to include possession offenses within the scope of criminal provisions designated as "receipt" of stolen property offenses. Examination of the Model Penal Code and various state law provisions provides additional guidance.

## 2. Theft and Receiving Stolen Property Under the Model Penal Code and State Law

The Model Penal Code provides a useful summary of recent developments in the treatment by the states of theft and related offenses and receipt and possession of stolen property offenses. *See* Model Penal Code and Commentaries pt. II, art. 223 (1980) (entitled "Theft and Related Offenses"). Section 223.6 of the Model Penal Code categorizes "Receiving Stolen Property" as a theft offense and defines it as follows:

> Receiving. A person is guilty of *theft* if he purposely receives, *retains*, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with purpose to restore it to the owner. "Receiving" means acquiring possession, control or title, or lending on the security of the property.

Model Penal Code § 223.6(1) (emphasis added). The Model Penal Code defines "receiving" to include "the retention of possession" of stolen property. Model Penal Code § 223.6, cmt. 2, at 235. A person "who receives without knowledge that the goods were stolen but who, upon learning of their status, nevertheless resolves to keep or sell them" has committed the offense of receiving stolen property. *Id*.

The Model Penal Code commentary notes that receiving stolen property was traditionally treated as an offense distinct from theft offenses such as larceny, embezzlement, and false pretenses, which involved the notion of a "trespass" against another's possession. A mere receiver of property wrongfully taken from its owner was not the trespasser and therefore not punishable for theft. The Model Penal Code, for both practical and analytical reasons, rejects the traditional "trespass" approach to defining theft offenses.

---

[8]See also 18 U.S.C. § 2317 (1994), entitled "Sale or receipt of livestock," which provides as follows: "Whoever receives, conceals, stores, barters, buys, sells, or disposes of any livestock, . . . knowing the same to have been stolen, shall [be subject to penalty]."

Analytically, "theft" involves the exercise of unlawful control over the property of another with a purpose to deprive. Such control can be exercised whether the taking is directly from the owner or the property is received from another who carried out the taking. In practice, it is often difficult to differentiate between the closely related activities of stealing and receiving. For this reason, the modern approach has been to consolidate receiving stolen property offenses with other forms of theft, as traditional acquisitive offenses have been consolidated into more broadly defined "theft" offenses.[9]  Model Penal Code art. 223, introductory note, at 122; *id.* § 223.6, cmt. 1, at 232.[10]

Many states have enacted receipt of stolen property statutes reflecting the approach of the Model Penal Code. These provisions, like the Nevada statute at issue in this case, generally include as prohibited conduct knowing receipt and knowing possession of stolen property and employ such terms as buying, selling, concealing, retaining, or withholding in describing offenses involving stolen property. Although, technically, such a statute might be read to distinguish a receipt offense from a retention or possession offense, the essential elements of both are control over property, knowledge that the property has been stolen, and lack of intent to restore the property to its owner. Punishment is the same whether the conviction is for receipt, possession, or one of the other offenses typically included in the list of prohibited acts.

Some states have used the term "possession of stolen property" to encompass receiving stolen property and related offenses. The State of Washington, for example, defines "possessing stolen property" to include "*knowingly to receive*, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."  Wash. Rev. Code Ann. § 9A.56.140 (West 1999) (emphasis added). New York appears to have encompassed all receipt and similar offenses under the prohibition against "criminal possession of stolen property."  N.Y. Penal Law §§ 165.40, 165.45, 165.50, 165.52, 165.54 (McKinney 1999).

Other states continue to distinguish between receipt and possession

---

[9]This "modern" approach of consolidating traditional acquisition and related offenses is reflected in 18 U.S.C. § 641.

[10]*Black's Law Dictionary* also broadly defines the term "theft," as follows:

Theft is any of the following acts done with intent to deprive the owner permanently of the possession, use or benefit of his property:  (a) Obtaining or exerting unauthorized control over property; or (b) Obtaining by deception control over property; or (c) Obtaining by threat control over property; or (d) Obtaining control over stolen property knowing the property to have been stolen by another.

*Black's Law Dictionary* 1477 (6th ed. 1990).

offenses. In North Carolina, for example, the offenses are set forth in two separate provisions of the criminal statute. *See* N.C. Gen. Stat. §§ 14-71, 14-71.1 (1999). The North Carolina Supreme Court has noted that "[a]lthough at first glance possession may seem to be a component of receiving, it is really a separate and distinct act." *State v. Davis*, 275 S.E.2d 491, 494 (N.C. 1981) (finding that a possession offense is not a lesser included offense of receipt of stolen property, but a separate offense). Nonetheless, under North Carolina law, the receipt and possession crimes punish essentially the same offenses and apply the same penalties.

As expressed in the Model Penal Code, however, the predominant modern view is that the term "receiving stolen property" is now used in a generic sense to encompass a number of closely related offenses, including the knowing possession, retention, withholding, or concealing of property with knowledge that it has been stolen.

## IV. CONCLUSION

We find that the "receiving stolen property" parenthetical in section 101(a)(43)(G) of the Act was intended to clarify that the term "theft" was not being used in its limited, traditional sense to require proof that the offender was involved in the actual taking of the property at issue.

First, the modern view of theft generally treats as equivalent those who knowingly receive and those who knowingly possess stolen property. The commentaries to the Model Penal Code explain that whether the term used is receiving, possessing, buying, or concealing, "[i]t seems clear that the essential idea behind these and other terms is acquisition of control, whether in the sense of physical dominion or of legal power to dispose." Model Penal Code § 223.6, cmt. 2, at 235. Accordingly, the Model Penal Code *definition* of "receiving" is "broad" and includes "the retention of possession [of stolen property]." *Id*. Moreover, under the Model Penal Code, one "is *guilty of theft* if he 'receives, retains, or disposes of movable property of another' with the requisite culpability." *Id.* cmt. 1, at 234. Second, nearly all of the federal "receipt" of stolen property provisions reflect an application of this well-understood meaning of "receiving" stolen property and include "possession" offenses within their scope. Finally, the focus is not just on the parenthetical in section 101(a)(43)(G) of the Act, but also on whether an offense is a "theft" offense within this provision. To read the parenthetical in the restricted manner urged by the respondent and the dissent would be to assume that Congress intended to apply a technical distinction within the "theft" definition set forth in section 101(a)(43)(G) that is inconsistent both with the modern view of "theft" offenses and with the consolidation and definition of theft and related offenses in Chapters 31 and 113 of Title 18 of the United States Code.

We conclude that the reference to "receipt of stolen property" in section 101(a)(43)(G) of the Act was intended in a generic sense to include the category of offenses involving knowing receipt, possession, or retention of property from its rightful owner. *See Matter of Rodriguez-Carrillo*, Interim Decision 3413 (BIA 1999). The respondent's conviction for attempted possession of stolen property is therefore an attempted theft offense under sections 101(a)(43)(G) and (U) of the Act. Accordingly, we find the respondent subject to removal as charged and remand the record to the Immigration Judge to allow the respondent to apply for any form of relief from removal for which he may be eligible.

## V. THE SERVICE'S PROSECUTORIAL DISCRETION

We address one final matter. The respondent has not raised the issue of prosecutorial discretion in this case. This is understandable as it has long been held that neither an Immigration Judge nor this Board may review a decision by the Service to institute deportation or removal proceedings. *See Matter of G-N-C-*, 22 I&N Dec. 281 (BIA 1998); *see also Matter of U-M-*, 20 I&N Dec. 327, 333 (BIA 1991); *Matter of Ramirez-Sanchez*, 17 I&N Dec. 503 (BIA 1980); *Matter of Marin*, 16 I&N Dec. 581 (BIA 1978); *Matter of Geronimo*, 13 I&N Dec. 680 (BIA 1971). We briefly address this issue only to note that there should be no question that, in fact, the Service still has prosecutorial discretion, which includes the discretion to address the equities of individual cases in a manner that the rigid application of a broadly drawn statute often will not allow.

In this regard, in restricting the judicial review of "the decision or action by the Attorney General to commence proceedings," Congress made clear in section 242(g) of the Act, 8 U.S.C. § 1252(g) (Supp. IV 1998), that such prosecutorial discretion still exists. Moreover, the United States Supreme Court recently reaffirmed the Service's continuing prosecutorial discretion, including the discretion to decline to institute proceedings "for humanitarian reasons or simply for its own convenience." *Reno v. Arab-American Committee*, 525 U.S. 471, 484 (1999). And, in response to a jointly posed question by 24 members of the United States Congress whether the Service believed that the 1996 amendments to the Act eliminated this discretion, the Assistant Attorney General of the United States, Office of Legislative Affairs, responded that the Service's fundamental authority to exercise prosecutorial discretion to decide whether or not to commence removal proceedings was not altered by enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546. The Assistant Attorney General recognized further that, in view of the expanded classifications of criminal aliens for whom no statutory relief from removal exists, the exercise of such

discretion can be "the only means for averting the extreme hardship associated with certain removal cases." Letter from Robert Raben, Assistant Attorney General, Office of Legislative Affairs, to Congressman Barney Frank (Jan. 19, 2000), *reprinted in* 77 Interpreter Releases, No. 7, Feb. 14, 2000, app. I, at 217-20.

We do not raise this issue to suggest that the exercise of such discretion was or is warranted in this case. We lack jurisdiction over this issue and, in any event, the record before us is far from complete. The Service may choose to further examine this issue on remand. However, there should be no question within the Service that prosecutorial discretion, and its important concomitant responsibilities, continues to exist.

**ORDER:** The appeal of the Immigration and Naturalization Service is sustained.

**FURTHER ORDER:** The decision of the Immigration Judge dated July 1, 1999, is vacated, and the record is remanded to the Immigration Court for further proceedings consistent with the foregoing decision.

*DISSENTING OPINION*: Lory Diana Rosenberg, Board Member, in which Paul W. Schmidt, Chairman; Gustavo D. Villageliu, John Guendelsberger, and Neil P. Miller, Board Members, joined

I respectfully dissent.

The majority's interpretation of "theft offense (including receipt of stolen property)" under section 101(a)(43)(G) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(G) (Supp. IV 1998), erroneously treats any conviction relating to stolen property as a theft offense. Although the majority attempts to equate the respondent's conviction for attempted possession of stolen property with a conviction for receipt of stolen property, such an equation is contrary to the plain language used by the United States Congress in the Act and amounts to an impermissible interpretation of the statute.

The plain meaning of the term "receipt" establishes that it means something different from the term "possession." Likewise, the crime of "receipt of stolen property" is distinct from the crime of "possession of stolen property." "Where the plain meaning of a provision is unambiguous that meaning is controlling, except in the "'rare case [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'"" *Almero v. INS*, 18 F.3d 757, 760 (9th Cir. 1994) (quoting *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982))).

The majority reviewed several federal statutes, but found that none provided "a conclusive answer" as to whether a state conviction for possession of stolen property is a "theft offense" as defined in the Act. The majority looked to the Model Penal Code, but found no authority for the conclusion

that all cases of possession of stolen property necessarily constitute receiving stolen property or theft. The majority also found that while some states apparently bundle together the offenses of receiving, retaining, possessing, concealing, or disposing of stolen property, others expressly distinguish possessing stolen property.

In short, the majority was unable to posit any conclusive authority for its holding that the respondent's conviction for attempted possession of stolen property constitutes a conviction for a "theft offense (including receipt of stolen property)" under section 101(a)(43)(G) of the Act. For the reasons discussed below, I find the majority's holding precipitous and unsupported either by the statute or by relevant authority addressing theft offenses.

## I. LEGAL AND PROCEDURAL BACKGROUND

The respondent was admitted to the United States as a refugee from Ethiopia (now Eritrea) when he was 4 years old. He has been a lawful permanent resident of the United States for 18 years, since November 4, 1982. He was convicted on February 6, 1997, pursuant to a plea bargain entered on April 11, 1996, of attempted possession of stolen property under sections 205.275 (referring to stolen property) and 193.330 (referring to attempts) of the Nevada Revised Statutes. Specifically, the respondent was found guilty of an attempt "wilfully, unlawfully . . ., for his own gain, [to] possess property . . . [he] knew, or had reason to believe, had been stolen."

The Immigration Judge terminated the removal proceedings that had been initiated by the Immigration and Naturalization Service. In terminating proceedings, the Immigration Judge looked to 18 U.S.C. § 2315 (1994) and concluded that, measured against this possible federal counterpart, the respondent's state conviction for attempted possession of stolen property did not constitute a theft offense under section 101(a)(43)(G) of the Act.

The Service appealed. To prevail on appeal, the Service must establish that the Immigration Judge erred in concluding that it failed to prove that the respondent is removable, and must establish further that the evidence supports the conclusion that the respondent is removable as charged. *See* section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (Supp. IV 1998) (imposing on the Service the burden of proof in removal proceedings involving a lawfully admitted alien); 8 C.F.R. § 240.8(a) (2000). In other words, there must be clear and convincing evidence in the record that the respondent's conviction under Nevada law constitutes a theft offense. *See* section 240(c)(3)(A) of the Act.

## II. STATUTORY INTERPRETATION OF "THEFT OFFENSE (INCLUDING RECEIPT OF STOLEN PROPERTY)"

Our task is to give effect to Congress' intent in enacting the phrase "(including receipt of stolen property)" in section 101(a)(43)(G) of the Act. It is not to legislate where Congress has declined to do so. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 n.12 (1987) (stating that there is a "strong presumption that Congress expresses its intent through the language it chooses").

Before we begin to peruse federal statutes and other sources of authority for possible guidance in interpreting Congress' intent, we must first consider the precise language that Congress used. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*, at 843. "In interpreting statutes, we begin with the language of the statute itself." *Aragon-Ayon v. INS*, 206 F.3d 847, 851 (9th Cir. 2000) (citing *Shaar v. INS*, 141 F.3d 953, 956 (9th Cir. 1998)). "Where the plain meaning . . . is unambiguous, that meaning is controlling." *Id.* (citing *Coronado-Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir. 1997)). If the plain language does not reveal Congress' intent, we should proceed to develop a reasonable interpretation of the phrase in question. *Id.* (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*).

We favor a categorical approach in determining whether a particular state conviction comes within the ambit of a ground of deportability articulated in the Act. *See, e.g.*, *Matter of Perez*, 22 I&N Dec. 1325 (BIA 2000) (relating to a burglary conviction); *Matter of K-V-D-*, 22 I&N Dec. 1163 (BIA 1999) (relating to a controlled substance conviction); *Matter of Alcantar*, 20 I&N Dec. 801 (BIA 1994) (relating to a crime of violence conviction); *see also Taylor v. United States*, 495 U.S. 575 (1990) (establishing a uniform federal standard for what constitutes a burglary offense). We seek to articulate and apply a uniform federal *standard*, not necessarily to adopt a particular federal *statute*. *See Matter of V-Z-S-*, 22 I&N Dec. 1338 (BIA 2000); *see also United States v. Baron-Medina*, 187 F.3d 1144 (9th Cir. 1999); *cf. Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991 (BIA 1999).

## A. Meaning of "theft offense"

The language before us is "theft offense (including receipt of stolen property)." Section 101(a)(43)(G) of the Act. In ascertaining the "plain meaning" of the statute, the Board "'must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Matter of Alvarado-Alvino*, 22 I&N Dec. 718, at 720 (BIA 1999) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 45.13, at 78 (5th ed. 1992) ("[L]egislators can be presumed to rely on conventional language

usage.").

Admittedly, while the meaning of "*theft*" may be clear, the phrase "*theft offense*" suggests that Congress meant something more than simply a conviction for theft. As such, the use of this phrase invites our interpretation. We recently have responded to this invitation and articulated an interpretation of what constitutes a theft in the context of the statutory phrase "theft offense." In *Matter of V-Z-S-*, *supra*, we reasoned that "Congress' use of the term 'theft' is broader than the common-law definition of that term," and held that "a taking of property constitutes a 'theft' whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id.* at 10.

However, the offense of which the respondent was convicted is not a theft within the meaning of "theft offense" as we have defined it. The respondent was convicted of attempted possession of stolen property. Conviction of this offense does not require proof that there was either a permanent or a temporary taking. It does not require proof of a taking at all. Conviction also does not require an intent to deprive the owner of the benefits of ownership. Consequently, under *Matter of V-Z-S-*, *supra*, the respondent was not convicted of a "theft offense."

### B. Meaning of the Parenthetical
### "(including receipt of stolen property)"

The question, therefore, is whether by having been convicted of attempted possession of stolen property, the respondent has been convicted of a "theft offense *(including receipt of stolen property)*" under section 101(a)(43)(G) of the Act. (Emphasis added.) No one contends that the respondent's conviction for attempted possession of stolen property is a conviction for theft. No one claims that the respondent has been convicted of receipt of stolen property. Thus, the question we are addressing actually is an attenuated one: is a conviction for attempted possession of stolen property a theft offense by virtue of its being the offense of "receipt of stolen property"?

The language used in the parenthetical phrase "(including receipt of stolen property)" is plain and straightforward. Unlike the broader scope of the language "theft offense," the modifying parenthetical phrase "including receipt of stolen property" refers specifically to a particular offense. It contains three terms—"including," "receipt," and "stolen property," of which "including" and "receipt" are the operative words.

Congress' use of a parenthetical does not authorize us to elaborate on the terms used. Under accepted rules of statutory construction, "parentheses indicate that the matter enclosed is in addition to, or in explanation of, the rest of the sentence." *Holmes Fin. Assoc., Inc. v. Resolution Trust Corp.*, 33 F.3d 561, 567 (6th Cir. 1994); *see also United States v. Monjaras-*

*Castaneda*, 190 F.3d 326, 328 (5th Cir. 1999) (interpreting a parenthetical descriptively based on the general context and structure of section 101(a)(43) of the Act). At most, as we stated in *Matter of Ruiz-Romero*, 22 I&N Dec. 486 (BIA 1999), *aff'd*, 205 F.3d 837 (5th Cir. 2000), "[W]e find that the parenthetical is merely descriptive."

Accordingly, the modifying parenthetical phrase helps only to elucidate the main clause of the provision. Although the language "theft offense" may require our interpretation, the parenthetical must be read according to its own terms in the context of that subsection of the Act. The phrase "(including receipt of stolen property)" after the word "offense" limits the crimes that are included within the phrase "theft offense." *United States v. Monjaras-Castaneda*, *supra*, at 329 (citing John E. Warriner & Francis Griffith, *English Grammar and Composition* (Heritage ed., Harcourt Brace Jovanovich 1977)). Specifically, the parenthetical provides that a "theft offense" encompasses the particular offense of receiving stolen property (which, by implication and judicial interpretation, is not a theft).

### 1. The Term "including" Refers to the Crime of "receipt of stolen property"

The word "including" comes from the verb "to include." "Include" means "[t]o confine within, hold as in an inclosure, take in, attain, shut up, contain, inclose, comprise, comprehend, embrace, involve." *Black's Law Dictionary* 763 (6th ed. 1990). "'Including' within [a] statute is interpreted as a word of enlargement or of illustrative application as well as a word of limitation." *Id.* (citing *Premier Products Co. v. Cameron*, 400 P.2d 227, 228 (Or. 1973)).

Therefore, we may reasonably conclude that the parenthetical phrase modifies and enlarges the phrase "theft offense" by referring to a specific circumstance or situation, i.e., the offense of receipt of stolen property. As discussed below, without this parenthetical, the crime of receiving stolen property would not necessarily constitute a theft offense.

### 2. The Term "receipt" in the Phrase "receipt of stolen property" Refers to a Separate Crime

Congress' inclusion of the phrase "receipt of stolen property" was necessary because receipt of stolen property is a statutory crime separate from the crime involved in the stealing or possession of the property. It was necessary because receipt is not theft.

The word "receipt" comes from the verb "to receive." "To receive" means to acquire. *Black's Law Dictionary*, *supra*, at 1268. Receipt connotes a deliberate act, i.e., active conduct. The elements of the offense of receiving stolen property are receipt of stolen goods with knowledge that they

1396

have been stolen and with intent to convert such goods to one's own use. *Teel v. United States*, 407 F.2d 604 (8th Cir. 1969). To convict an individual for such an offense, it is necessary to prove that the accused received the property, knowing at that time that it was stolen. *Lewis v. Hudspeth*, 103 F.2d 23 (10th Cir. 1939).

The courts have invariably held that receiving is not a lesser included offense of theft. *E.g.*, *Schmuck v. United States*, 489 U.S. 705 (1989) (stating that one offense is not "necessarily included" in another unless the elements of the lesser offense are a subset of the elements of the charged offense); *see also United States v. Spencer*, 905 F.2d 1260, 1262 (9th Cir. 1990). A defendant cannot be convicted of both larceny and receiving the same stolen property. *Milanovich v. United States*, 365 U.S. 551, 555 (1961); *see also United States v. Gaddis*, 424 U.S. 544, 547 (1976); *Heflin v. United States*, 358 U.S. 415, 419-20 (1959) (concluding that in enacting the proscription against receipt, the legislature was "trying to reach a new group of wrongdoers, not to multiply the offense of the . . . robbers themselves"); *Point v. State*, 717 P.2d 38 (Nev. 1986).

The Model Penal Code section cited by the majority does not discuss the offense of possession of stolen property. Rather, it discusses the offenses of theft and receiving, and categorizes such offenses as being one and the same. The majority fails to recognize, however, that despite section 223.6 of the Model Penal Code and its accompanying commentary, state and federal courts continue to distinguish the offenses of theft and receiving stolen property. Consequently, if Congress wished to encompass receipt of stolen property in the aggravated felony category of theft offenses, it was critical for Congress to have added the parenthetical phrase.

### 3. The Crime of "possession of stolen property" Is Neither Theft Nor "receipt of stolen property"

In contrast to the offense of receiving stolen property, the offense of possession of stolen property connotes conduct that is more passive. There is no requirement that the offender receive the property to be convicted of this crime; he simply must possess it. Moreover, possession alone does not constitute receipt of stolen property, as possession means no more than having control over a thing with the intent to have and to exercise such control. *See Oswald v. Weigel*, 549 P.2d 568, 569 (Kan. 1976); *see also Black's Law Dictionary*, *supra*, at 1163. Possession, as an element of an offense relating to stolen goods, extends to things under one's power and dominion. *See McConnell v. State*, 266 So. 2d 328, 333 (Ala. Crim. App. 1972).

Similarly, possession is distinct from retention, which means to keep or to *continue* to possess. *See Lewis v. Hudspeth*, *supra*. Possession also is distinct from sale. *See Albrecht v. United States*, 273 U.S. 1 (1927) (holding that possessing and selling the same liquor are different offenses); *see also United*

*States v. Fowler*, 463 F. Supp. 649, 651 (W.D. Va. 1978). Possession also is distinct from concealment. *See United States v. Pichany*, 490 F.2d 1073 (7th Cir. 1973); *see also Corey v. United States*, 305 F.2d 232 (9th Cir. 1962).

In many cases, state courts have found that evidence of possession of stolen property does not support a conviction for receipt of stolen property, but may constitute evidence of theft. For purposes of criminal prosecution, "an unexplained, falsely or implausibly explained, or suspicious possession of recently stolen property raises a presumption or inference that the possessor stole the property . . . [and] operated to preclude convictions for receiving stolen property." David J. Marchitelli, Annotation, *Participation in Larceny or Theft as Precluding Conviction for Receiving or Concealing the Stolen Property*, 29 A.L.R. 5th 59 (1995).

For example, where a defendant was found in possession of a stolen vehicle, and was convicted of theft and receiving stolen property, the court in *Byrd v. State*, 605 N.E.2d 231 (Ind. Ct. App. 1992), held that the inference of theft created by the defendant's possession was sufficient to preclude his conviction for receiving stolen property. In *Sosbee v. State*, 270 S.E.2d 367 (Ga. Ct. App. 1980), the court ruled that where a defendant is in recent unexplained possession of stolen property, it is neither necessary nor advisable to find that the same possession constitutes guilt of theft by receiving. *See also People v. Watts*, 370 N.E.2d 583 (Ill. App. Ct. 1977). *But see Sankey v. State*, 568 So. 2d 366 (Ala. Crim. App. 1990) (holding that where a defendant offered no explanation for being found in a parked stolen automobile, his possession did not preclude a conviction for receiving stolen property).

Therefore, although possession of stolen property may support an inference sufficient to warrant a conviction for theft, it is not the same as a conviction for either theft or receiving stolen property. *See Muniz v. State*, 663 S.W.2d 660 (Tex. Crim. App. 1983) (ruling that where a defendant was acquitted of theft and the evidence did not establish how the defendant came into possession of stolen property, he could not be convicted of theft by possession of stolen property); *Hagan v. State*, 104 S.W.2d 857 (Tex. Crim. App. 1937) (holding that a defendant's unexplained possession of stolen property would have warranted a conviction for theft or burglary, but that, without more, it was insufficient to establish the offense of receiving stolen property). Thus, the elements of the crime of possession of stolen property are distinct from the elements of the crime of receiving stolen property. *Schmuck v. United States*, *supra.*

The amendment of 18 U.S.C. § 2315 to cover possession supports this reading. As the respondent argues, the 1986 amendment of this federal statute relating to receiving stolen property reflects that Congress recognized the need to include possession as an offense different from receipt if it wished to treat possession of stolen property as a theft offense. Such inclusion does not indicate, as the majority suggests, that receiving and pos-

session are interchangeable. Rather, they are distinct.

Receipt is receipt and possession is possession. Were these offenses one and the same, it would be surplusage for Congress to have included possession in the 1986 amendment to 18 U.S.C. § 2315. These distinctions reasonably explain Congress' intent in adding the parenthetical "(including receipt of stolen property)" to indicate what it intended to be covered by the language "theft offense." In the face of the courts' disparate treatment of the offenses of theft and receipt of stolen property, Congress' apparent purpose in revising the language of § 2315 was to mandate that a conviction for receipt of stolen property, while not necessarily a "theft" per se, was henceforth to be considered a "theft offense" for purposes of the Act.

## C. Permissible Interpretation of "receipt of stolen property"

In the case before us, the respondent was convicted of possession of stolen property. Although the facts underlying his conviction may or may not have supported a prosecution for theft, we do not redetermine those facts. His conviction for attempted possession of stolen property is not a conviction for theft and it is not a conviction for receiving stolen property.

At the very least, where a statute is silent or ambiguous and an agency determination is concerned, the agency's determination must be reasonable. *Aragon-Ayon v. INS*, *supra*, at 851 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, *supra*). Even assuming that the majority is correct in treating section 101(a)(43)(G) of the Act as requiring our interpretation before we can implement its language in accordance with congressional intent, the interpretation proposed by the majority is not a permissible one.

For over 50 years the Supreme Court has ruled that we must interpret immigration statutes to give effect to the **"**longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien.**"** *INS v. Cardoza-Fonseca*, *supra*, at 449 (citing *INS v. Errico*, 385 U.S. 214, 225 (1966); *Costello v. INS*, 376 U.S. 120, 128 (1964); *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10 (1948)). Even if the statutory language and legislative history "leave the matter in some doubt, we [are] constrained by accepted principles of statutory construction in this area of the law to resolve that doubt in favor of the petitioner." *Costello v. INS*, *supra*, at 128. This rule of construction, unique to the interpretation of immigration statutes, mandates that "we will not assume that Congress meant to trench on his freedom *beyond that which is required by the narrowest of several possible meanings* of the words used." *Fong Haw Tan v. Phelan*, *supra*, at 10 (emphasis added); *see also Squires v. INS*, 689 F.2d 1276, 1280 (6th Cir. 1982) (mandating a liberal construction in favor of the alien); *Marino v. INS*, 537 F.2d 686 (2d Cir. 1976) (same).

1399

We have recognized and applied this rule with approval in over 30 precedent decisions issued since 1949. *See, e.g.*, *Matter of Farias*, 21 I&N Dec. 269, 274 (BIA 1996; A.G., BIA 1997)); *Matter of Tiwari*, 19 I&N Dec. 875 (BIA 1989); *Matter of Baker*, 15 I&N Dec. 50 (BIA 1974); *Matter of Andrade*, 14 I&N Dec. 651 (BIA 1974); *Matter of G-*, 9 I&N Dec. 159 (BIA 1960); *Matter of K-*, 3 I&N Dec. 575 (BIA 1949). In doing so, we have found consistently that "[i]t is equally clear that any doubts in deciding such questions [of deportability] must be resolved in the alien's favor." *Matter of Serna*, 20 I&N Dec. 579, 586 (BIA 1992). Accordingly, we have been "reluctant to read *implied restrictions* into the statute, particularly in the context of a deportation proceeding." *Matter of Chartier*, 16 I&N Dec. 284, 287 (BIA 1977) (emphasis added). In reaching its decision, the majority has utterly failed to observe and follow this rule.

Furthermore, "[o]ur compass is not to read a statute to reach what we perceive—or even what we think a reasonable person should perceive—is a 'sensible result'; Congress must be taken at its word unless we are to assume the role of statute revisers." *Bifulco v. United States*, 447 U.S. 381, 401 (1980) (Burger, C.J., concurring) (citing *Aaron v. SEC*, 446 U.S. 680 (1980); *TVA v. Hill*, 437 U.S. 153 (1978)). "The temptation to exceed our limited judicial role and do what we regard as the more sensible thing is great, but it takes us on a slippery slope. Our duty, to paraphrase Mr. Justice Holmes in a conversation with Judge Learned Hand, is . . . to apply the law and hope that justice is done. The Spirit of Liberty: Papers and addresses of Learned Hand 306-307 (Dilliard ed. 1960)." *Id*. at 401-02.

The purpose of developing a uniform interpretation of an arguably ambiguous phrase in the aggravated felony provisions of the Act is to provide consistent treatment of a conviction for the referenced offense. However, the review conducted by the majority fails to yield a common definition. Instead, the authorities considered are inconclusive and, to some extent, inapposite.

The majority has identified no definitive basis to support its bootstrapping of a conviction for "possession of stolen property" as a conviction for receipt of stolen property. *Cf. Fong Haw Tan v. Phelan*, *supra*; *Matter of Tiwari*, *supra*. The statute contains no indication that Congress meant this separate offense, to which it did not refer, to be included under the ambit of a "theft offense (including receipt of stolen property)" in section 101(a)(43)(G) of the Act. Where a statute lists some generic offenses but omits others, the statute should be read to cover only the generic offenses expressly listed. *See, e.g.*, *Leyva-Licea v. INS*, 187 F.3d 1147, 1149 (9th Cir. 1999) (citing *Coronado-Durazo v. INS*, *supra*, at 1325-26).

Moreover, the Model Penal Code, to which the majority refers, does not discuss receipt of stolen property in relation to possession of stolen property, but discusses receipt of stolen property only in relation to theft. Our interpretation of receipt of stolen property as a theft offense is a given,

based on the plain language used by Congress in including a descriptive parenthetical in section 101(a)(43)(G) of the Act. We do not need to justify treating receipt of stolen property as a theft offense because Congress mandated such treatment.

We do, however, need to justify treating a conviction for the crime of "possession of stolen property" as though it were a conviction for the crime of "receipt of stolen property." Possession of stolen property is a distinct offense. A defendant can possess stolen property knowing it was stolen if he learns of the theft after he assumes possession. Moreover, retention of possession requires that the offender continue to keep the property after learning that it was stolen. The respondent was not convicted of either receipt or retention of stolen property. He was convicted of attempted possession of stolen property.

The subsection of the Act before us does not refer to possession of stolen property, but refers expressly to "receipt of stolen property." The majority's awkward and unlikely syllogism—receiving stolen property includes retention of possession of stolen property, and retention of stolen property is a possession offense, so therefore possession of stolen property must either be receiving or some other theft offense—is unjustifiable. Not only does it defy logic, but it is based on nothing more than isolated commentary in the Model Penal Code. *Cf. Taylor v. United States*, *supra*, at 598 (adopting a generic definition that embodies the modern use of the term "burglary" that appears in most state criminal codes and approximates the usage in the Model Penal Code).

Similarly, the fact that federal or state statutes bundle together several related offenses under a broad umbrella that includes "receiving stolen property" does not alter the plain language of the Act or the established meaning of the particular offense of "receipt of stolen property." Neither the Model Penal Code nor any assortment of criminal statutes can transform the crime of possession of stolen property into either the crime of theft or the crime of receipt of stolen property.

We must "decline to add to the law what Congress has plainly excluded." *Monet v. INS*, 791 F.2d 752, 754 (9th Cir. 1986) (citing *Fedorenko v. United States*, 449 U.S. 490, 517-18 (1981) (holding that courts are without equitable power to moderate or avoid statutory mandates of the immigration laws)). As we stated in *Matter of Campos-Torres*, 22 I&N Dec. 1289 (BIA 2000), the words in the statute mean what they say. "Our task is not to improve on the statute or to question the wisdom of it, but rather to interpret the language that was enacted as law." *Id.* at 6 (citing *Richards v. United States*, 369 U.S. 1, 10 (1962) (asserting that, notwithstanding the ease of application inherent in an alternative construction of a statute, the courts "are bound to operate within the framework of the words chosen by Congress and not to question the wisdom of the latter in the process of construction")).

Our job is to read the statutory language narrowly and in the respondent's favor. *Fong Haw Tan v. Phelan*, *supra*, at 10; *Matter of Serna*, *supra*, at 586; *Matter of Tiwari*, *supra*, at 881. Yet, the majority unnecessarily broadens the convictions covered under the "theft offense" category. Similarly, our job is not to legislate. *Bifulco v. United States*, *supra*. Yet, that is precisely what the majority has done. The majority has improperly expanded upon the language used by Congress and added the offense of possession of stolen property to the phrase "receipt of stolen property." No federal statute supports this reading. The Model Penal Code does not support this reading. The decisions of federal and state courts do not support this reading. Rather, each of these authorities supports the conclusion that possession of stolen property amounts to a different offense. Possession does not constitute the offense of receipt of stolen property.

## III. DIVISIBILITY OF THE NEVADA STATUTE

The interpretation offered by the majority also does not resolve the question whether the respondent's conviction for possession of stolen property under the Nevada statute constitutes a "theft offense." In *United States v. Baron-Medina*, *supra*, the United States Court of Appeals for the Ninth Circuit emphasized that a state offense qualifies as an aggravated felony "if and only if the 'full range of conduct' covered by it falls within the meaning of that term." *Id.* at 1146 (quoting *United States v. Lomas*, 30 F.3d 1191, 1193 (9th Cir. 1994)); *see also Matter of Sweetser*, Interim Decision 3390 (BIA 1999).

Accordingly, even under the majority's overbroad definition, the respondent's conviction for possession of stolen property constitutes a theft offense only if it amounts to stealing, taking, or receiving stolen property, with intent to deprive the owner of ownership. The record does not contain clear and convincing evidence that the offense of which the respondent was convicted constitutes a "theft offense" under any reading of section 101(a)(43)(G) of the Act.

The Nevada statute at issue covers several types of conduct that it has categorized under the generic rubric of an "offense involving stolen property." An individual commits an offense under the statute if he or she buys, receives, possesses, or withholds such stolen property. *See* Nev. Rev. Stat. § 205.275 (1997). These forms of conduct are presented in the conjunctive. Proof of any one form of conduct constitutes one element of the offense necessary to obtain a conviction.

As discussed above, possession is not receipt. Possession is neither buying nor withholding. Moreover, in addition to the "conduct" element, the Nevada statute includes two other elements that must be established to obtain a conviction, each of which is presented in the conjunctive. There is

a "purpose" element, which requires proof that the conduct is engaged in "for his own gain *or* to prevent the owner from again possessing his property." Nev. Rev. Stat. § 205.275(1) (emphasis added). There also is an "intent" or mental state element, which requires proof that the defendant acted knowing the property was stolen *or* under circumstances in which a reasonable person would believe the property was stolen.

By providing for four distinct forms of participation, two different purposes motivating the defendant's participation, and two different mental states underlying the defendant's participation, the Nevada statute is one that we characterize as "divisible." *See Matter of Perez*, *supra*; *Matter of Sweetser*, *supra*. A statute's divisibility means that while some of the conduct adequate to incur a conviction under the statute might constitute an offense that comes under the Act, some does not. Such circumstances require our consideration of the record of conviction. *See Matter of Teixeira*, 21 I&N Dec. 316, 319 (BIA 1996) (ruling that we may look to the judgment of conviction to determine the offense of which the respondent was convicted, and when neither the criminal statute nor the judgment of conviction supports the charge, we then may look to the record of conviction); *Matter of Short*, 20 I&N Dec. 136, 137-38 (BIA 1989).

Accordingly, a defendant could be convicted under this statute without a taking and without the intent to prevent the owner from possessing his property. *Cf. Matter of V-Z-S-*, *supra.* In fact, that is what appears to have happened in the instant case. Although the respondent was convicted of attempted possession of stolen property for his own gain, he was not convicted of such attempted possession with the intent to deprive the owner of his or her ownership. *Cf. id.*

The Service did not provide any evidence that the offense of which the respondent was convicted involved a taking. *Cf. id*; *cf. also* section 240(c)(3)(A) of the Act; 8 C.F.R. § 240.8. The Service did not provide any evidence that the respondent was convicted of receiving stolen property with the intent to deprive the owner of the benefits of ownership. *Cf. id.* Rather, the record only contains evidence that the respondent's conviction for possession of stolen property was for his own gain. This is not evidence of either theft or receipt of stolen property.

## IV. CONCLUSION

The record does not contain clear and convincing evidence that the respondent's conviction for attempted possession of stolen property constitutes a conviction for either theft or receipt of stolen property under section 101(a)(43)(G) of the Act. In the absence of clear and convincing evidence to prove the charges lodged, section 240(c)(3)(A) of the Act requires us to dismiss the Service's appeal. *See Matter of Teixeira*, *supra*, at 322.

Accordingly, I cannot agree that the respondent is removable as charged under section 237(a)(2)(A)(iii) of the Act, and I conclude that the proceedings should be terminated.