April PACK *v.* STATE of Arkansas

CA 00-736                                    41 S.W.3d 409

Court of Appeals of Arkansas
Division I
Opinion delivered March 14, 2001

124

*Everett Law Firm*, by: *Elizabeth E. Storey*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

WENDELL L. GRIFFEN, Judge. April Pack appeals from her adjudication as a delinquent in connection with two charges of felony criminal mischief. She argues that the trial court erred in denying her motions for a directed verdict on the criminal mischief charges and erred in failing to suppress an inculpatory

statement taken in violation of her *Miranda* rights. We disagree and affirm.

On Friday, October 8, 1999, at approximately 8:00 p.m., Officer Richard Jensen of the Lincoln Police Department was patrolling the Lincoln Square when he received a report that some potted plants had been destroyed at a doctor's office located on the square. When Jensen went to investigate the report, he saw appellant, Terrence Brunner, Krystle Murphy, and Brad Olsen near the Veterans of Foreign Wars Building (VFW), which stands approximately fifty to seventy-five feet from the doctor's office.

Later that night, appellant's mother, Sandra Bowman, telephoned Jensen to determine why he was looking for appellant. As a result of this conversation, Bowman took appellant to the police station on October 9, where they both signed a *Miranda* rights form. Appellant then gave Jensen the following statement concerning the incidents that occurred on the Square on October 8:

> I, April Pack, Krystle Murphy, [and] Brad were walking around by the Square at p.m.[ *sic*] and Brad keyed a car and yanked up flowers by the office so we went the other way and left him [*sic*] then Krystle's mom picked her up, and so I called my mom and had her come pick me up and she took me home and then she called the cops and said something and I had to go to the police station and talk about something.

The next day, Jensen received criminal mischief reports for damages that occurred to two vehicles that were parked on the Square in a parking lot adjacent to the VFW Building and the doctor's office. These reports indicated that between 8:00 p.m. and 9:00 p.m. on October 8, Mary Barnes' green Ford Aerostar Van was scratched from the front to the back on the passenger side, and the "F word" was scratched across the fender. The reports also indicated that the words "F*ck Lincoln" were written in nail polish on the right front fender of Joann Wyatt's white Pontiac Bonneville.

Jensen testified that after he received the reports on the damaged vehicles, he telephoned appellant's mother. He stated that appellant and her mother voluntarily returned to the police station on October 13 on an unrelated matter. He said that after appellant and her mother had been there about fifteen minutes, he told them that he needed to get another statement from appellant. He then

asked her why she did not tell him about any cars being keyed in her October 8 statement.[1] Appellant responded, "You didn't ask me." At this point, appellant's mother became upset and indicated to appellant, "You better tell him what you know." Jensen then handed appellant a "Suspect's Statement" form and said, "Write down what happened that night." At this point, appellant gave the following statement:

> April Pack, Krystle Murphy, Brad Olsen, Terrence Brunner were walking around Friday '99 [sic] and we got in the bad attitude mood and decided to key cars and bust plants and paint on cars and then Terrence went home, Krystle went home, Brad went home, then so did I.

Jensen admitted that he did not advise her of her *Miranda* rights.

Appellant was charged with two counts of felony criminal mischief, based on the damage to the vehicles, and one count of misdemeanor criminal mischief, based on the destruction of the plants. Appellant filed a motion to suppress her October 13 statement, arguing that when Jensen questioned her on October 13, he knew that she was a suspect in the incidents; therefore, it was improper for him to interrogate her without advising her of her *Miranda* rights. The State argued that *Miranda* warnings were not necessary in this case because appellant was not in custody. The trial court found that there was no evidence appellant was in custody and further found that her mother was a participant in the conversation with Jensen, and was the actual person who prompted her daughter to provide the statement. Thus, the trial court denied appellant's motion to suppress.

At trial, Jensen testified to the events as noted above. In addition, the State presented testimony from the owners about the damage caused to their vehicles. Mary Barnes testified that her van was scratched by a key or a knife, causing approximately $1,443.17 in damages. Barnes stated that her vehicle was scratched from front to back on the passenger side and across the fender. She also stated that the "F word" was scratched onto her car. Joann Wyatt testified that her Bonneville was damaged with fingernail polish and was scratched. She stated that the words "F*ck Lincoln" were written in nail polish on her front right fender, and her car was scratched all

---

[1] However, as the above statement shows, on October 8 appellant did tell Jensen that "Brad keyed a car."

the way down on the right side. She testified that the estimated cost to repair the damage from the scratches was $1,058 and the estimated cost to repair the damage from the nail polish was $50.

Terrence Brunner also testified on behalf of the State. In his original statement to police, he maintained that Murphy did not damage either vehicle. At trial, he testified that he was with appellant on October 8; that Olsen keyed a green van and pushed over some plants; that Murphy keyed a white car; and that appellant put fingernail polish on the white car. Brunner also stated that the keys and nail polish came from Murphy's purse. He said that Murphy rummaged through her purse and set items out on the ground. Then, Olsen picked up the key and handed it to Murphy, and appellant picked up the nail polish. He stated that neither appellant nor Murphy was with Olsen when he knocked over the plants, but that all four of them were together when the cars were damaged. He also testified that he was standing approximately six to eight feet away from them at the time, but he did not know what appellant was doing while the cars were being keyed and the fingernail polish was being used. Brunner further stated that he was holding his nephew during these incidents and did not cause any damage to the vehicles.

At the close of the State's evidence and at the close of all of the evidence, appellant moved for a directed verdict on all charges. She maintained that the evidence was not specific enough to convict her of any of the three charges, and she maintained that Brunner was not a credible witness. She argued that his statement, as an accomplice, did not constitute sufficient evidence to support a conviction. The State maintained that it had corroborating evidence in the form of 1) Jensen's testimony that appellant was on the Square at approximately the same time the incidents occurred; 2) Bowman's phone call to Jensen shortly after the incident asking why he wanted to talk to appellant when he had not even filed a report at that point; and 3) appellant's inculpatory statements. The trial court denied appellant's motion for a directed verdict.

Appellant then presented her case. She had Jensen read into the record a statement given to Jensen by Murphy in which she stated that Brunner and Olsen keyed a car; that Brunner wrote "F Lincoln" on a car; and that she and appellant sat on the sidewalk while Olsen and Brunner damaged the vehicles. Brunner testified that appellant did not encourage or assist Olsen in keying the van and did not encourage or assist Murphy in keying the Bonneville. He also stated that appellant was at a nearby gas station when Olsen

knocked over the plants, because she had told him she was going there.

At the close of her case, appellant renewed her motion for a directed verdict, maintaining that there was no evidence that she was involved in the keying of the van or the damaging of the flower pots. With regard to the Bonneville, appellant maintained that the evidence showed only that she used the fingernail polish; there was no testimony that she keyed the Bonneville. The trial court granted appellant's motion with respect to the charge of damaging the flower pots. However, the trial judge specifically found that Brunner was not a credible witness with respect to his testimony that he was not involved. The trial judge further found that appellant was guilty as an accomplice regarding the damage to the Bonneville, in that she not only placed nail polish on one vehicle, but was doing so when the other damage occurred. With regard to the van, the court stated that the owner's testimony in conjunction with Jensen's testimony was sufficient to find the petition to be true with respect to that charge. The court ordered appellant to serve thirty days at the Juvenile Detention Center, with twenty days suspended. The court also placed her on twelve months' probation and ordered her to pay restitution to the victims.

## I. Sufficiency of the Evidence

Appellant was charged with felony counts of criminal mischief for the damage caused to the two vehicles. Criminal mischief is defined under Arkansas Code Annotated section 5-38-203 (Repl. 1997). This statute provides:

(a) A person commits the offense of criminal mischief in the first degree if he purposely and without legal justification destroys or causes damage to:

(1) Any property of another[.]

\*\*\*

(c)(1) Criminal mischief in the first degree is a Class C felony if the amount of actual damage is five hundred ($500.00) or more.

(2) Otherwise, it is a Class A misdemeanor.

■ In resolving the question of the sufficiency of the evidence in a juvenile delinquency case, the standard of review is the same as in a criminal case. *See McGill v. State*, 60 Ark. App. 246, 962 S.W.2d 382 (1998). On appeal, we treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *See Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). When we review a challenge to the sufficiency of the evidence, we will affirm the conviction if there is substantial evidence to support it, when viewed in the light most favorable to the State. *See id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *See id.* In determining whether there is substantial evidence, we consider only that evidence tending to support the verdict. *See Johnson v. State*, 337 Ark. 196, 987 S.W.2d 694 (1999). We do not weigh the evidence presented at trial, as that is a matter for the fact-finder. *See Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998).

Appellant maintains that the State did not present substantial evidence that she caused any damage to the vehicles. First, she maintains that her inculpatory statements do not establish that she caused any of the damage to the vehicles or the plants. Further, to the extent that she alleged that "we got in the bad attitude mood and decided to key cars and bust plants and paint on cars," the only person she ever identified as keying a vehicle or damaging plants was Olsen. Moreover, she never identified the cars or made reference to a particular vehicle. Therefore, she argues, the trial court had to engage in speculation and conjecture in order to determine that she scratched either of the vehicles.

She also argues that even if the trial court believed Brunner's testimony, the most that it established was that she caused $50 in damage to the Bonneville by using fingernail polish. The statute clearly requires a showing of at least $500 in damage to support a felony criminal mischief charge; therefore, she maintains that the evidence is insufficient to support such a charge in this case.

■■ We hold that the evidence favoring the State is sufficient to support a finding that appellant is liable as an accomplice in this case. An accomplice is one who directly participates in the commission of an offense or who, with the purpose of promoting or facilitating the commission of an offense, or aids, agrees to aid, or attempts to aid the other person in the planning or committing the offense. Ark. Code Ann. §§ 5-2-403(a)(1)-(2) (Repl. 1997). Further, each accomplice is criminally liable for the conduct of the

others. *See Robinson v. State*, 318 Ark. 33, 883 S.W.2d 469 (1994). The relevant factors in determining the connection of an accomplice to a crime are the presence of the accused in the proximity of the crime, the opportunity to commit the crime, and an association with a person involved in the crime in a manner suggestive of joint participation. *See Banks v. State*, 315 Ark. 666, 869 S.W.2d 700 (1994). Further, because this was a juvenile case, the State was not required to show corroborating evidence to independently establish the crime. *See Munhall v. State*, 337 Ark. 41, 986 S.W.2d 863 (1999).

■ We hold that the trial court did not err in denying appellant's motions for a directed verdict, because the evidence in this case was sufficient to hold her criminally responsible as an accomplice to felony criminal mischief. First, even excluding appellant's October 13 statement, her first statement, Jensen's testimony, and Brunner's testimony provide overwhelming evidence that she was near the proximity of the crime at the time when it was alleged to have occurred. Likewise, the same testimony establishes that she had the opportunity to commit the crimes. Third, the same testimony shows that she was associated with others involved in the crimes in a manner to suggest joint participation. In addition, Brunner's testimony that appellant got the nail polish from the ground after Murphy removed it from her purse also supports a finding of joint participation.

■ Finally, Brunner's testimony that appellant painted on the Bonneville with nail polish is the sole evidence that establishes her direct involvement. It is true that the trial court stated that Brunner was not a credible witness, but the court made this statement in regard to Brunner's denial of his involvement, not in regard to his testimony regarding appellant's involvement. In any event, the resolution of conflicting testimony and an assessment of the credibility of witnesses are issues given wide discretion to the fact-finder. *See Ricks v. State*, 316 Ark. 601, 873 S.W.2d 808 (1994). Therefore, we hold that the trial court did not err in denying appellant's motion for a directed verdict.

## II. Motion to Suppress

■ ■ We further hold that the trial court did not err in denying appellant's motion to suppress her October 13 statement because she was not subjected to a custodial interrogation. In

reviewing a trial court's ruling on a motion to suppress, the appellate court makes an independent determination based on the totality of the circumstances. *See Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997); *Hale v. State*, 61 Ark. App. 105, 968 S.W.2d 627 (1998). Where the trial court denied a defendant's motion to suppress, we will reverse only if, in viewing the evidence in the light most favorable to the State, the trial court's ruling is clearly against the preponderance of the evidence. *See Travis, supra; Wofford, supra.*

According to Jensen's testimony, after he received the report regarding the two vehicles being damaged, he telephoned appellant's mother. He stated that appellant and her mother later voluntarily came into the police station, on an unrelated matter, on October 13. He stated that after they had been there approximately fifteen minutes, he asked appellant why she did not tell him about the cars being damaged when she gave her prior statement. Appellant responded, "You didn't ask me." At this point, appellant's mother became upset and indicated to appellant that she had better tell Jensen what happened. At that point, Jensen handed appellant a piece of paper that has a box labeled "Suspect's Statement" that Jensen checked at the top of the form. Jensen concedes that appellant was a suspect in the case when she came in on October 13.

The issue is whether under the above circumstances, appellant was subjected to custodial interrogation so that Jensen was required to inform her of her *Miranda* rights. The test in this regard has been articulated as follows:

> 'It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. A policeman's unarticulated plan has no bearing on the question of whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'

*Shelton v. State*, 287 Ark. 322, 328-29, 699 S.W.2d 728, 731 (1985) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)).

We hold that the trial court did not err in denying appellant's motion to suppress. The purpose of *Miranda* warnings is to protect defendants from custodial interrogations by the State, not by third parties. *See Miranda v. Arizona*, 384 U.S. 436, 461 (1966)(stating the principles embodied in the privilege apply to

informal compulsion exerted by law-enforcement officers during in-custody questioning). Here, appellant was not entitled to *Miranda* warnings on October 13 because her statement was the result of prompting that was neither custodial nor the product of interrogation by the State.

First, there is nothing in the record to suggest that a reasonable person in appellant's position would assume that she was in custody. Jensen's undisputed testimony shows that appellant and her mother voluntarily came to the police station on an unrelated matter. Thus, they were not there at the behest of the State and were not there in connection with the charges in this case. After they had been at the police station for approximately fifteen minutes, Jensen asked appellant why she had not told him about the cars being damaged. Appellant's mother was with her during the entire incident. Appellant was not taken into an interrogation room; nor was she arrested. She does not allege that she was physically or verbally threatened or restrained in any manner.[2]

Second, appellant's statement was prompted by her mother, not the State. While Jensen initially asked appellant why she had not originally told him about the damaged vehicles, it is clear that appellant's mother took over the discussion at that point and ordered appellant to tell Jensen what happened. Thus, appellant's mother, and not Jensen, prompted her to answer his questions in this case. *Miranda* warnings are not required under these circumstances.

Affirmed.

ROBBINS and NEAL, JJ., agree.

---

[2] The trial court specifically found that the *Miranda* warnings that were issued on October 8 did not extend forward to the exchange on October 13 because appellant was questioned with regard to a different subject, the damage caused to the vehicles. Appellant has not appealed this finding; thus, we do not address that issue.