Garrett Kirby HUNT  *v.*  STATE of Arkansas

CA 05-178                                      213 S.W.3d 667

Court of Appeals of Arkansas
Opinion delivered September 21, 2005

*Cullen & Co., PLLC*, by: *Tim Cullen*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., *Maggie C.B. Smith*, Law Student Admitted to Practice Pursuant to

Rule XV(E)(1)(b) of the Rules Governing Admission to the Bar of the Supreme Court, and *Darnisa Evans Johnson*, Deputy Att'y Gen., for appellee.

DAVID M. GLOVER, Judge. The Sharp County Circuit Court adjudicated appellant, Garrett Hunt, delinquent for the crime of harassment and sentenced him to the Division of Youth Services for a term to be determined by the facility or alternatively, to a stay at the Sheriff's Ranch. The trial judge ordered that if appellant was not admitted to the Sheriff's Ranch, then the period of detention by DYS was not to exceed two years. On appeal, appellant argues (1) that there was not substantial evidence to prove that he committed the crime of harassment, and (2) that the trial court's sentence to DYS for a period not to exceed two years was retributive punishment rather than in his best interest. We agree that substantial evidence did not exist to prove that appellant committed harassment, and we reverse.

The standard of review for sufficiency of the evidence in a juvenile proceeding is the same as in a criminal case. *Pack v. State*, 73 Ark. App. 123, 41 S.W.3d 409 (2001). In reviewing a juvenile-delinquency case, we look at the record in the light most favorable to the State to determine whether there is substantial evidence to support the conviction. *J.R. v. State*, 73 Ark. App. 194, 40 S.W.3d 342 (2001). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.* In determining whether there is substantial evidence, we only consider that evidence tending to support the verdict, and we do not weigh the evidence presented at trial, as that is the responsibility of the finder of fact. *Pack, supra.*

In the present case, Natoshia Ivy testified that when she boarded the school bus after school on August 20, 2004, appellant asked her, "Has Daddy lost any money yet?" Natoshia stated that she initially ignored him, but that later appellant started saying, "Ivy's Daddy sucks, Daddy sucks." Natoshia said that she then told him that he had better shut up, and appellant responded, "Ivy's daddy sucks his own balls." Natoshia testified that appellant did not touch her, but that she was very upset and offended by his comments. She said that she talked to the bus driver about the incident the following day.

Colbert English, the bus driver, testified that one day Natoshia told him that appellant had said mean things to her and was

cursing at her, and that he yelled back at appellant not to say anything to her. English said that he planned to separate the two on the bus, but that day was the last day appellant rode the bus.

Beatrice Sharp, the Highland Chief of Police, testified that appellant admitted to her during an interview to making vulgar comments about Natoshia's father, but that he did not think that anyone had heard him. However, she admitted that she did not take a statement from appellant, and that there was nothing in her notes stating that appellant admitted making vulgar comments about Natoshia's father.

Several students who were on the bus on the day in question testified for the defense. Chris Eash stated that he was on the bus, that he did not hear appellant say anything vulgar to Natoshia, and that he did not notice that Natoshia was upset or that she talked to the bus driver. Adam French testified that he did not see tears in Natoshia's eyes when she got off the bus, but that she was in a hurry to get off the bus. French stated that he had never seen appellant cause Natoshia any problems.

John Wolverton, appellant's older brother, testified that he was sitting a couple of rows behind appellant on the bus and that the only comment he heard appellant make to Natoshia was to ask if her dad lost any more money that day in court. Wolverton denied hearing appellant use any vulgar language, and he said that Natoshia did not look upset. Amanda Hunt, appellant's sister, testified that she was sitting right in front of appellant on the bus and only heard him ask Natoshia if her dad lost any money. Hunt said that Natoshia was acting normal when she got off the bus.

Appellant moved to dismiss the charges on the basis that the comments were not made in a manner likely to provoke a violent and disorderly response. In denying that motion and adjudicating appellant delinquent, the trial judge stated:

> My problem with this case is not what was said but what wasn't said. The one thing that has been consistent from the witnesses of the defendant was the fact that he asked if her daddy had lost any money. With the history of this matter . . . it's the air and attitude upon which these things are said that could have provoked some type of response that would, in fact, violate the statute as far as harassment.

> The court feels the statement met the burden that it was intended to provoke this person. The testimony of Ms. Ivy indicates that it

went beyond that. That he made remarks, that if she'd been a boy, she'd tried to take him on. I feel like it was the tone and environment in which the statement was made that makes this a violation. The court makes a true finding of harassment.

The trial judge also stated that he was afraid that if appellant went home that "this" would never be over — that someone would get hurt and "we'll have a funeral going on."

■ A person commits the offense of harassment if, "with the purpose to harass, annoy, or alarm another person, without good cause, he, in a public place, directs obscene language or makes an obscene gesture to or at another person in a manner likely to provoke a violent or disorderly response." Ark. Code Ann. § 5-71-208(a)(2) (Repl. 1997).

■ Appellant divides his sufficiency argument into two parts — that the inquiry about whether Natoshia's father had lost any money was not obscene, and that the comments were not likely to provoke a violent response. In the first part of his argument, appellant focuses on the statement appellant made about Natoshia's father losing any money, and argues that it is not obscene. However, appellant fails to address, either at trial or on appeal, whether the remaining portion of his statement that Natoshia testified about — that her daddy "sucks his own balls" — is obscene. In his motion to dismiss at trial, appellant only argued that the comments were not made in a manner likely to provoke a violent and disorderly response. Because appellant has never made an argument that the statement that Natoshia's daddy "sucks his own balls" is not obscene, we will not address it.

However, the second prong of appellant's sufficiency argument is precisely what he argued to the trial court — that the comments were not made in a manner likely to provoke a violent or disorderly response. We agree.

■ In accordance with the statute, the State had to prove that appellant's comments were made in a manner likely to provoke a violent or disorderly response. Viewing the evidence in the light most favorable to the State, we hold that this element was not proved. Natoshia did not respond to appellant's comments in a violent or disorderly manner. Moreover, Natoshia did not testify that she wanted to do anything violent or disorderly — she just said that appellant's comments made her very upset and that she was offended by them.

■ The trial judge commented, "My problem with this case is not what was said but what wasn't said. . . . [I]t's the air and attitude upon which these things are said that could have provoked some type of response that would, in fact, violate the statute as far as harassment. . . . if she'd been a boy, she'd tried to take him on." The problem with the trial court's rationale, however, is that the statute sets forth two types of conduct that will constitute harassment: obscene language or obscene gestures. Here, there was no evidence that appellant made any gestures, and even though appellant clearly directed comments at Natoshia, the trial judge specifically noted that it was not the spoken words that gave him a problem in this case; rather, it was "what wasn't said." Under the statute appellant was charged with violating, without accompanying obscene gestures, unspoken words do not constitute harassment because silence is not likely to provoke a violent or disorderly response. Moreover, although the trial judge speculated that if Natoshia had been a boy, she would have tried "to take [appellant] on," the fact remains that Natoshia is not a boy, and she did not testify to having such a reaction to appellant's words. The trial court's supposition is simply irrelevant.

Because we reverse this case upon appellant's first argument, we need not address his second argument concerning the length of his sentence. However, we note that appellant would have served less time had he been charged as an adult with the Class A misdemeanor crime of harassment than he was ordered to serve when he was adjudicated delinquent.

Reversed and dismissed.

PITTMAN, C.J., and GLADWIN, J., agree.