### KING *v.* STATE.

### Crim. 4033

### Opinion delivered June 7, 1937.

J. R. Booker, for appellant.

Jack Holt, Attorney General, and John P. Streepey, Assistant, for appellee.

MEHAFFY, J. The appellant, Dave King, was indicted, tried and convicted of receiving stolen property. W. H. Coleman testified that he lived in Pulaski county and that on August 25, 1936, a watch was taken from his home. His house was broken into and a 21-jewel white-gold Illi-

nois watch, worth $45, and a new straw hat were stolen. The watch originally cost about $100. He had had it for ten or twelve years, and it was in good condition when it was taken. He knows nothing about the appellant having the watch in his possession.

H. R. Peterson testified that he was a detective of the Little Rock police department and arrested Dave King; he had a stolen watch. Witness said he and other officers had the thief, Robert Barnes, who stole the watch. At the time they took Dave King they found the watch that belonged to Coleman; that the watch exhibited was Coleman's watch. At the time they took the watch from him, King stated that he got it from Robert Barnes, and paid two or three dollars for it. King had the watch in his pocket, and did not say whether he knew it was stolen. The boy who stole the watch was convicted.

Harold Judd, a detective, assisted in arresting appellant. He stated that they found the watch, belonging to Coleman, on appellant. He had the watch in his pocket and stated that he had bought it from a colored boy named Barnes, and paid three or four dollars for it.

Robert Starks testified that he had lived in Little Rock 20 years; that he had the watch which he now sees, in his possession, having received it in 1936 and pawned it to Dave King three or four times, for from three to five dollars; that he did not tell appellant it was stolen. He said he knew the watch by the face, the four-leaf clover and the chain on it. He got it from Robert Williams and pawned it to Dave King. He does not run a pawn shop, but he was in a game and got broke. He pawned it on Sunday and got arrested on Monday; had not had an opportunity to pay King the money so as to recover the watch.

William High testified that he lived in Little Rock and was in a crap game with Dave King and Robert Starks when this watch was produced; Starks had the watch and pawned it to Dave King; he did not say it was stolen; King let him have six dollars on it; said they were in the habit of pawning things to one another.

Dave King testified that he lived on State street in Little Rock and runs a shoe shining parlor at 724 West

Ninth Street; he did not know the watch had been stolen, but he did have it in his possession; got it from Robert Starks; let him have a dollar at a time until it ran up to five dollars. On Monday they arrested Starks and asked him for the watch; he did not have it, but witness did; he told the officers he received it from Robert, but he was talking about Robert Starks; he said they were in the habit of pawning things to each other; he did not know the watch had been stolen. Starks was standing at the car talking to another boy in the car named Mitchell; witness heard Starks testify that he was not there at the time witness was arrested, but he was mistaken; they carried them to the jail at the same time; he did not say to the officers that he bought it from Robert Starks.

Appellant contends, first, that there was no proof on the part of the state that King had guilty knowledge, and he calls attention to Underhill on Criminal Evidence, Fourth Edition, § 527, p. 1058. But a portion of that section reads: "Absolute knowledge that the goods have been stolen is not necessary; a belief on the part of the accused caused by facts and circumstances, may be enough."

These negroes were all engaged in a crap game and evidently knew each other very well. When King was arrested he had the watch in his possession, and the officers testify that appellant told them he bought it, and he testified that Starks had pawned it to him. At any rate he had possession.

Recent and unexplained possession of property, stolen, is admissible in prosecution for receiving stolen goods, as circumstances material to the issues.

This court has said: "Possession of property recently stolen, without reasonable explanation of that possession, is evidence of guilt to go to the jury for their consideration." *Sons* v. *State,* 116 Ark. 357, 172 S. W. 1029; *Mays* v. *State,* 163 Ark. 232, 259 S. W. 398.

The evidence was sufficient to sustain the conviction.

Appellant, also, cites Brill's Cyclopedia Criminal Law, Volume 2, § 928. That section merely provides that it is necessary to show that the thing received was stolen,

where the statute makes property so obtained the subject of offense.

Section 931 of the same volume provides: ''Knowledge need not be shown by direct evidence, but it may be proved by or inferred from circumstances.''

It is next contended by appellant that the evidence is insufficient to sustain a conviction of the crime of receiving stolen property, or any other crime. The evidence shows that the person who actually stole the watch was convicted, and it, also, shows that the watch found in the possession of appellant was Coleman's watch. One of the officers testified that when he arrested appellant he found on him the watch that belonged to Coleman. The facts are sufficient to justify a conviction.

This court does not pass on the credibility of witnesses nor the weight to be given to their testimony. The jury heard the evidence, saw the witnesses, and it is certain from the record that the appellant was arrested, in possession of Coleman's watch. The evidence shows that the watch was worth $45 at the time it was stolen from Coleman. This question was properly submitted to the jury, and its verdict is conclusive.

While the evidence is not entirely satisfactory, yet it was sufficient to submit the question to the jury, not only as to appellant's knowledge that the property was stolen, but, also, as to the value of the property. In determining whether the evidence is sufficient to support the verdict, the evidence is viewed in the light most favorable to the state.

We find no error, and the judgment is affirmed.