WILLIAMS *v.* STATE.

4221                                        154 S. W. 2d 809

Opinion delivered October 13, 1941.

*Gene E. Bradley,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

SMITH, J.    Two informations were filed against appellant, each charging him with the crime of receiving

stolen property. The first information alleged the ownership of the stolen property to be in Dr. F. B. Elliott; the second alleged the owner of the stolen property to be unknown. The cases were consolidated and tried together, and appellant was found guilty of receiving the property stolen from Dr. Elliott and given a sentence of two years in the penitentiary, and this appeal is from the judgment pronounced on this verdict.

The testimony is to the following effect. Lewis Rusk, who was 18 years old at the time of the trial and two younger boys, conspired together to steal automobile wheels and tires and casings with the inner tubes. Junior Ragan, one of these boys, testifed that they started operations in April or May, and continued their thefts until July, when they were arrested. Admittedly as many as 8 or 9 tires, wheels and casings were stolen in this interval. It is not entirely clear how many of these appellant bought, but it is fairly inferable that he bought all the boys stole.

Appellant and the boys were arrested, and appellant was told to bring to the jail all the wheels, etc., which he had bought, and he brought 8 wheels and 6 tires to the jail. One of these wheels was identified by Dr. Elliott as his property, which he testified was stolen from the trunk of his automobile. The boys told how the sales were made to appellant, and their testimony as to the time and manner and places of sale make the inference irresistible that appellant must have known that the wheels, etc., had been stolen. For instance, one of the sales was made and the wheel delivered in a corn field.

It was appellant's custom, when he made purchases, to take a bill-of-sale, and the boys testified that they did not tell appellant that they were selling stolen property, and they further testified that appellant did not know the property had been stolen.

Appellant operated a repair and junk shop, and dealt in second-hand wheels, tires, casings, and inner tubes, and he testified that his purchases from the boys were made in the usual course of this business, and that he did not know he was buying stolen property.

Dr. Elliott had a new wheel, which he carried in the trunk of his car, ready to be placed on the car when occasion arose. When he identified his wheel, it was delivered to him and it was not present at the trial.

The wheel alleged to be the property of an unknown owner was produced at the trial, and witnesses placed its value at more than $10, while other witnesses thought it was not of that value.

Dr. Elliott's wheel was one which could have been used interchangeably with the wheel belonging to the unknown owner, and we think the testimony is sufficient to support the finding that, if the wheel belonging to the unknown owner was worth more than $10, the wheel belonging to Dr. Elliott was of equal value, but, if not, the testimony of witness Seay sufficiently proved the value of the Elliott wheel to support the verdict upon the issue of the value of Dr. Elliott's wheel. Seay testified as follows: "Q. Do you remember Dr. Elliott's De Soto he purchased? A. Yes. Q. Do you remember the kind of tires that came with that car, that comes with that model, the spare tire? A. Yes. Q. The car was two months old when the spare was taken off, what is the fair market value of that wheel? A. The wheel is $8.50 and the tube and tire $15.95."

The court gave what might be called the usual instructions in cases of this kind, which conformed to the law of the subject as announced by this court in numerous cases.

At the conclusion of these instructions appellant's counsel requested the court to charge the jury as follows: "Gentlemen, you are instructed that in the prosecution for receiving stolen goods, proof of receiving the goods with knowledge that they had been stolen is the essential element of the offense. It is not sufficient merely to show that the accused had guilty knowledge that some of the goods had been stolen."

The court did not give this instruction, but gave the following additional instruction: "Gentlemen, this is an additional instruction given you, not by way of repetition, but to better explain a little more fully concerning the issues in this case. There is no dispute between the State

and the defendant that the property in question was stolen. The statute does not provide that one is guilty of a violation simply in receiving or buying stolen property. It is for your determination, to find whether or not, at the time he bought the property, he knew it to be stolen. The words of the statute are—whoever shall receive stolen goods, money or chattels, knowing them to be stolen, with the intent to deprive the true owner thereof. This is not intended to be an emphasis of any one instruction over another.''

There was no error in this respect. The last instruction given by the court quoted so much of § 3144, Pope's Digest, as defines the offense of ''Receiving stolen goods.'' The mere receipt and possession of stolen goods does not constitute the offense. It is essential that they be received with knowledge that they had been stolen, and with the intent to deprive the owner thereof of his property. If this is done, the offense is committed, and this is the purport of the instruction above copied.

It may be said that appellant was found in possession of property recently stolen, and his explanation that he had bought it without knowledge of that fact was not accepted by the jury as true. It was said in the recent case of *Morris* v. *State,* 197 Ark. 778, 126 S. W. 2d 93, that ''The possession of recently stolen property, if unexplained to the satisfaction of the jury, is sufficient to sustain a conviction either of larceny or of receiving stolen property.''

The case was submitted under correct instructions, and the testimony abundantly sustains the verdict. The judgment must, therefore, be affirmed, and it is so ordered.