Richard SPRINGSTON *v.* STATE of Arkansas

CA CR 97-539                                        962 S.W.2d 836

Court of Appeals of Arkansas
Division III
Opinion delivered February 25, 1998

*Chet Dunlap*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Mac Golden*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Richard Springston brings this appeal from his first-offense conviction of driving while intoxicated for which he was sentenced to fourteen days in jail, fined

$500, and his driver's license was suspended for thirty days. For reversal, he contends that there is no substantial evidence to support the jury's verdict of guilt and that the trial court erred in allowing the admission of a videotape into evidence. We find no merit in the issues raised and affirm.

First, appellant challenges the sufficiency of the evidence. Arkansas Code Annotated § 5-65-103(a) (Repl. 1993) provides that it is unlawful for any person who is intoxicated to operate or be in actual physical control of a motor vehicle.

In reviewing the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the State and affirm if the verdict is supported by substantial evidence. *Brown v. State*, 54 Ark. App. 44, 924 S.W.2d 251 (1996). Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resort to speculation or conjecture. *Christian v. State*, 54 Ark. App. 191, 925 S.W.2d 428 (1996). We need consider only that testimony that supports the verdict of guilt. *Ricks v. State*, 316 Ark. 604, 873 S.W.2d 808 (1994).

Greene County Deputy John Purcell testified that he was employed by the Arkansas State Police on May 21, 1995, and that at around 3:10 p.m. he was called upon to investigate an accident at the intersection of Highways 351 and 358. About three-quarters of a mile away from the intersection, he observed a man, the appellant, attempting to walk on the shoulder of the road. Deputy Purcell testified that appellant "wasn't doing too good," and that he was staggering, stumbling and "lurching around," meaning that he was walking sideways as if he might fall onto the roadway. Purcell stopped to determine what the problem might be, and as he came close to the appellant, he smelled the strong odor of an alcoholic beverage about the appellant's person. At around 3:20 p.m., he placed appellant under arrest for public intoxication, handcuffed him, read him his rights, and placed him in the patrol car. Purcell then proceeded to the intersection where he found a pick-up truck nosed off into a ditch. He said that it crossed his mind that appellant might have been the driver of the truck, so he ran a check on the vehicle's license plate and learned

that the truck belonged to the appellant. Keys found in appellant's pocket fit the ignition of the truck.

Later, Purcell took appellant to the Paragould Police Department for a breathalyzer test. Purcell testified that appellant was obnoxious, a bit threatening, and uncooperative. He said that appellant was firm in his conviction that he would take a test for public intoxication, but not for DWI.

On cross-examination, Purcell further testified that appellant had told him that a man named Phil Vincent had been driving the truck at the time of the accident, and that Vincent had climbed a fence and had walked in the other direction across a field. Purcell said that he made his way up and down the road looking for this person. He checked with passers-by to see if they had met anyone on foot and spoke with a farmer who had not seen anyone in his field. He said that his investigation produced no evidence, other than appellant's word, that Phil Vincent had been with appellant in the truck.

Dewayne Johnson of the Paragould Police Department testified that appellant was brought to him for a breathalyzer test. He said that appellant was uncooperative and refused to acknowledge that he understood his rights under the implied consent law. Johnson testified that appellant kept stressing the point that he was not driving a vehicle and thus would not state that he understood the obligation to take the test. He said that appellant told him that he would take a test if charged with public intoxication, but not if the charge was DWI. A videotape of these discussions was introduced and played for the jury over the appellant's objection.

The State also presented the testimony of Kenneth Wilburn, appellant's neighbor. He testified that he saw appellant and another man get into separate vehicles that afternoon at around 2:00 p.m. He said that they left in a hurry, that the wheels of both vehicles were spinning, and that they drove erratically up a hill. Wilburn testified that this was not too unusual because there was loose gravel on the hill but that he had, nevertheless, been concerned. He later noticed that several young trees to the side of the road had been run over.

Appellant's argument is that the State failed to prove that he either operated or was in actual physical control of a vehicle. He relies chiefly on our decision in *Cook v. State*, 37 Ark. App. 27, 823 S.W.2d 916 (1992). There, the appellant was one of a group of individuals associated with a vehicle that had struck a tree. The officer had not seen the appellant driving the vehicle, and we concluded that the evidence was not sufficient to sustain a finding that appellant operated or was in physical control of the vehicle. The State maintains that the facts of this case compare more favorably with those found in our decision in *Neble v. State*, 26 Ark. App. 163, 762 S.W.2d 393 (1988). In that case, witnesses heard an accident near their home, and they went to the scene where they discovered a vehicle that had come to rest in a ditch after tearing down some fifty to sixty feet of a fence. The vehicle was unoccupied, and the witnesses contacted a deputy who lived nearby when they were unable to locate the driver. The deputy and other law enforcement officers arrived and began looking for the driver. During the search, the officers learned that the vehicle was registered in the appellant's name, and they received a report that a man, later identified as the appellant, had come to the deputy's home and had told the deputy's wife that his car had broken down. The appellant had left by the time the deputy arrived at his home, but he was eventually found lying face down in a ditch three hundred feet from the wrecked vehicle. When questioned, the appellant told an officer that he had not been driving the vehicle but that the driver was a man named "Bill," whom he had met at a tavern. On this evidence, we held that the jury, without speculating, could have concluded that the appellant was driving the vehicle when the accident occurred.

Turning to the case at hand, we first observe that the statute does not require law enforcement officers to actually witness an intoxicated person driving or exercising control of a vehicle. *Wetherington v. State*, 319 Ark. 37, 889 S.W.2d 34 (1994); *Hodge v. State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989). It is well-settled that the State may prove by circumstantial evidence that a person operated or was in actual physical control of a vehicle. *Wetherington v. State*, *supra*; *Azbill v. State*, 285 Ark. 98, 685 S.W.2d 162 (1985). Circumstantial evidence may constitute sub-

stantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Yocum v. State,* 325 Ark. 180, 925 S.W.2d 385 (1996). The question of whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the jury to decide. *Key v. State,* 325 Ark. 73, 923 S.W.2d 865 (1996). Our responsibility, as the reviewing court, is to determine whether the jury verdict is supported by substantial evidence. *Wetherington v. State, supra.*

■■ We hold that the verdict is so supported. Appellant was discovered walking away from a one-vehicle accident involving his own truck for which he possessed the keys in his pocket. There was testimony that appellant had been driving his truck not long before his encounter with the police. And, the jury was entitled to disregard appellant's story that someone else had been driving the truck, particularly in light of Deputy Purcell's testimony concerning his efforts to locate that person, who was nowhere to be found. A jury is not required to believe the accused's version of events because he is the person most interested in the outcome of the trial. *Reams v. State,* 45 Ark. App. 7, 870 S.W.2d 404 (1994). *See also Altes v. State,* 286 Ark. 94, 689 S.W.2d 541 (1985); *Neble v. State, supra.* In addition, a jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances. *Reams v. State, supra.* We think there is sufficient evidence from which the jury could properly infer that appellant was operating the vehicle at the time the accident occurred.

In his next point, appellant contends that the trial court abused its discretion in allowing the jury to view the videotape filmed at the Paragould Police Department. He argues, in reference to Rule 403 of the Arkansas Rules of Evidence, that the probative value of the tape was substantially outweighed by the danger of unfair prejudice. He contends that the tape was overly prejudicial in that he was shown in handcuffs and because it depicted him as being angry and argumentative, using profanity, and refusing the breathalyzer test. We cannot agree.

■■ It has repeatedly been held that the balancing of probative value against prejudice is a matter left to the sound dis-

cretion of the trial court, and this decision will not be reversed absent a showing of manifest abuse. *Hill v. State*, 325 Ark. 419, 931 S.W.2d 64 (1996). The prejudice referred to in Rule 403 denotes the effect of the evidence on the jury, not the party opposed to it. *Sasser v. State*, 321 Ark. 438, 902 S.W.2d 773 (1995). Since intoxication is an essential element of the crime in this case, evidence that shows the demeanor of the accused at or near the time of the offense is highly relevant to that issue. The fact that the evidence may have also portrayed the appellant in an unfavorable light does not constitute the kind of *unfair* prejudice that would require its exclusion at trial. We also have some difficulty in accepting appellant's claim of prejudice when we consider that appellant contended that the tape was favorable to his defense in his arguments before the court in his motion for a directed verdict and before the jury in his closing statement. We find no abuse of discretion.

Affirmed.

ROBBINS, C.J., and CRABTREE, J., agree.