Leisa Ann EATON *v.* STATE of Arkansas

CA CR 06-747                                    249 S.W.3d 812

Court of Appeals of Arkansas
Opinion delivered February 14, 2007

*Randy Rainwater*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Nicana Corinne Sherman*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A jury in Polk County Circuit Court convicted appellant, Leisa Eaton, of theft by receiving, in violation of Ark. Code Ann. § 5-36-106(a) (Supp. 2003). She was sentenced to six years' imprisonment in the Arkansas Department of Correction. On appeal, appellant challenges the sufficiency of the evidence. Specifically, she asserts that the State failed to prove that she possessed and sold stolen property, knowing or having good reason to believe it was stolen. We affirm.

The charge in this case arose from the theft of three four-wheelers from a deer club and appellant's subsequent possession and disposal of those four-wheelers. Larry Attaway, a resident of Texarkana, Texas, was a member of a deer club located three miles east of Naples, Texas, in Cass County. He and another member of the deer club, Roger Adams, testified that several members of the club kept campers and four-wheelers on the property where the deer club was located. Mr. Attaway had two four-wheelers that he had taken to the deer club, a 2000 red Honda worth at least $2,500, and a 2002 Polaris 325, with camouflage paint and a winch, worth approximately $5,000. Mr. Adams testified that he had a blue 2003 Yamaha Kodiak 400 cc, worth more than $2,500, that he used at the deer club. Both men testified that before the first week in July 2005, their three four-wheelers were stolen from the deer club.

Mr. Attaway also testified that after the four-wheelers were stolen from the deer club, appellant contacted Monty Latham, another member of the deer club, alleging to have information on the location of the stolen four-wheelers. She also contacted Mr. Attaway on his cell phone. Mr. Attaway testified that, in exchange for retrieving the four-wheeler, appellant asked that the club members not press charges related to the stolen four-wheeler and, if she traveled to Texarkana, that she receive money for travel expenses. Mr. Attaway testified that he first met appellant on a day when she, the deer club members, and the sheriff's deputies met "at Cove," where "[appellant] was trying to get locations on where they could recover these [four-wheelers]." Appellant told the deer club members and the deputies that the four-wheelers could be located at the houses of both Brandon Eaton (appellant's

ex-husband) and Mr. Roberts. The deputies were unsuccessful in their attempt to find the four-wheelers at either location. Nonetheless, Mr. Attaway stated that in return for appellant meeting them and offering them information on the location of the four-wheelers, one of the deer club members gave appellant approximately $650. They also "put gas in her car and fed her." Mr. Attaway testified that from that point forward, the investigation was left to the sheriff's deputies.

Deputy Peebles testified that he was responsible for the investigation of the theft of the three four-wheelers that had been stolen from the deer club. The investigation revealed that the Polaris had been sold to Robbie Dixon, another of appellant's ex-husbands. The Polaris was in Robbie Dixon's possession and was recovered from him. The Yamaha was recovered in Zephra, Oklahoma. Deputy Peebles testified that appellant and Brandon Eaton were the two people suspected of committing the theft of the three four-wheelers. Deputy Peebles obtained warrants for both appellant and Brandon, and Brandon was later arrested. Deputy Peebles conducted an interview with appellant. He testified that during that interview, appellant stated that her husband had stolen the four-wheelers and that she had taken one of them. She admitted to having knowledge that the four-wheelers were stolen and to riding the four-wheelers around "quite often." Deputy Peebles testified that she further admitted to selling the Polaris to Robbie Dixon for $1,200, in an effort to obtain the money she needed to leave Brandon Eaton, her husband at the time.

Kayla Blake, an acquaintance of appellant's, testified that in July, the same month that the four-wheelers were stolen, she and her husband rode over to appellant's house on their four-wheelers. Only appellant and Robbie Dixon were in the yard. As they pulled up to appellant's house, they watched as Robbie Dixon loaded a camouflage four-wheeler with a winch into the back of his truck. Before he left, he wrote out a check and handed the check to appellant.

Robbie Dixon testified that he worked for a company out of Oklahoma and that he traveled approximately nine to ten months out of the year. He and appellant had one child together, and they were divorced in 1997. Robbie testified that while he was traveling for work, appellant called him to ask a question about their daughter. During that conversation, appellant also asked him if he knew anyone that would be interested in buying a four-wheeler.

She revealed to him that she wanted to sell it in order to obtain the money she would need to find a place to live after she left her husband. Robbie later ran into appellant and their daughter at the local Hatfield Super Stop. Appellant and their daughter were riding the Polaris 325. Appellant asked him if he was still interested in buying the four-wheeler. After taking the four-wheeler for a test ride, Robbie decided to purchase it for $1,200. He went to appellant's residence to purchase the four-wheeler. He gave her $300 in cash and the balance of $900 with a check. After purchasing the four-wheeler, Robbie left town for work purposes. While out of town, he received a call from Sheriff Mike Oglesby, informing him that the four-wheeler was stolen. Once the VIN number was confirmed, Robbie agreed to return the four-wheeler to Polk County. He testified that just after Sheriff Oglesby called him, appellant also called him "in a panic state" and informed him that he needed to return the four-wheeler because it was stolen. Robbie testified that he "already knew [the four-wheeler was stolen] and [he] was trying to stay neutral in the deal."

Appellant testified that her then husband, Brandon Eaton, arrived home one day with the four-wheelers. She gave the following testimony regarding her thoughts on the day that Brandon brought the four-wheelers to their home: "I didn't know where they came from. I knew he hadn't worked. I knew he was into a lot of drugs with different people. I didn't know what to think. I didn't know if they were stolen. I had no idea. That's what I'm saying. I just knew he wasn't working." Appellant testified that she "had no idea where [the four-wheelers] came from, I didn't at the time." She testified that Brandon was abusive and that she was afraid of him. Because she wanted to leave him and because she was without any money to do so, she decided to sell one of the four-wheelers to Robbie Dixon. She stated that at the time she sold the four-wheeler to Robbie, she did not know it was stolen. Just after selling the four-wheeler to Robbie, she overheard a conversation between Brandon and his cousin as to how they had obtained the four-wheelers. This information frightened her, and as a result, she called deer club member Monty Latham (appellant's former employer and someone she had known for years) to see if any of the four-wheelers were missing from the deer club. Mr. Latham asked her to get the VIN numbers off the four-wheelers and to come to Texarkana. She told Mr. Latham that she was unable to make the trip because she did not have money for gasoline. She stated that Mr. Latham offered to pay for her gasoline, in addition to any other expenses, if she would come to

Texarkana. Appellant drove to Texarkana, where Mr. Latham was able to make an identification, from the information that appellant had, that the four-wheelers that she had seen were the ones stolen from the deer club. The members of the deer club followed appellant to Cove, where she called the deputy and asked him what she should do with the information she had. The deputy met appellant and the deer club members at Lewis Lumber, and she told the deputy where she thought the four-wheelers might be or where Brandon might have taken them. She also stated that she contacted Robbie to inform him that the four-wheeler that he had purchased was stolen.

On cross examination, appellant admitted that in her written statement, she said that the four-wheelers were "stolen." A portion of appellant's written statement is as follows:

> Back in April or May 2005, Brandon came up with some stolen ATV's. I did not [k]now where they came from but I knew Brandon had no money and he had been selling dope to make money. I told my dad about it and he told me to turn him in. I said no cause I knew I would get arrested for them too.

> The ATV's were a green Polaris, a blue Yamaha and another red one. I saw the red one only briefly in the back of Brandon's truck going out the driveway. I suspected they were stolen because we had no money.

However, she stated on cross examination that she now disputed the portion of her written statement stating that the four-wheelers were stolen. Appellant testified that she wanted Deputy Peebles to change her written statement to reflect that she did not know where the four-wheelers came from and that she knew only that Brandon did not have a job and that he was into drugs.

Appellant also testified that Brandon owed Scott Jacobs, a resident of Oklahoma, money for drugs. Appellant testified that while she was afraid of Scott, she had gone to his house in Oklahoma on one occasion to pick up Scott's wife because he had beaten her up "real bad." While at the house, appellant saw the red Honda four-wheeler that was stolen from the deer club.

Overall, appellant testified that she felt "that it was wrong, what happened to the gentlemen from Texas." She wanted them to know the truth about their four-wheelers. She met with Deputy

Peebles in an attempt to help the deer club members recover their four-wheelers, and she contacted Robbie Dixon, who had purchased one of the four-wheelers from her, to ask him to return it.

Mr. Latham, also a member of the deer club, testified that he had known appellant for several years and that she had worked for him at one time. He testified that in the Spring of 2005, he invited Brandon and appellant out to the deer camp for a "work day." He stated that she rode the four-wheelers around the property that day and that she was very familiar with all of the equipment that the men had at the club. He stated that she phoned him around the middle of July 2005 and asked him if any of the four-wheelers had been stolen. She told him that she might have some information as to where he could locate the four-wheelers. Mr. Latham testified that as he spoke with appellant, he became suspicious of her story. Then, when she went to Texarkana to meet him to discuss the location of the stolen four-wheelers, she brought back items, such as knives, black powder, hunting material, and bags, that were stolen out of the trailers at the deer club. At the time Mr. Latham spoke with appellant, she was angry with Brandon and said that she was going to try to get back at him. She made the statement that, "well, I think [Brandon] did it." However, Mr. Latham felt that the information that she had given him about the stolen four-wheelers "put her there, not Brandon." Mr. Latham testified that he felt appellant was being untruthful and that she was just trying to place the blame on someone other than herself.

Brandon's father, Thomas Eaton, testified that he was at Brandon and appellant's house one day when she drove up in Brandon's truck. The truck was pulling a trailer with four-wheelers loaded on it. Thomas asked Brandon if he could purchase one of the four-wheelers, but Brandon refused, stating that "you don't want one." Thomas testified that when he saw appellant drive up pulling the trailer with the four-wheelers, he assumed that the four-wheelers belonged to Brandon and appellant.

At the conclusion of the State's case, appellant's counsel made a motion for a directed verdict, asserting that the State had not shown that appellant received, retained, or disposed of stolen property of another person knowing that the property was stolen or having a good reason to believe that it was stolen. The motion was denied. Appellant's counsel renewed the motion for a directed verdict at the conclusion of all the testimony. Again, the court denied the motion. Ultimately, the jury convicted appellant of theft by receiving, in violation of Ark. Code Ann. § 5-36-106(a).

In reviewing a challenge to the sufficiency of the evidence, this court will affirm if there is substantial evidence to support the verdict. *Pack v. State*, 73 Ark. App. 123, 130, 41 S.W.3d 409, 414 (2001). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Id.* The evidence, whether direct or circumstantial, must be of sufficient force that it compels a conclusion with reasonable and material certainty. *Barnett v. State*, 68 Ark. App. 38, 3 S.W.3d 344 (1999).

On appeal, appellant asserts that the trial court erred in finding that appellant possessed and sold stolen property, knowing or having good reason to believe it was stolen. A person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person, knowing it was stolen or having good reason to believe it was stolen. Ark. Code Ann. § 5-36-106(a) (Supp. 2003). For purposes of this section, "receiving" means acquiring possession, control, or title or lending on the security of the property. *Id.* § 5-36-106(b). Theft by receiving is a Class B felony if the value of the property is two thousand five hundred dollars ($2500) or more. *Id.* § 5-36-106(e)(1). Except where a statute provides otherwise, a criminal intent is essential to the offense of receiving or concealing stolen goods and related offenses. 76 C.J.S. *Receiving Stolen Goods* § 9 (2006).

There is no dispute that appellant possessed and controlled the property at issue. There is no dispute that the property at issue was stolen. Appellant only challenges the jury's finding that she knew or had good reason to believe that the property was stolen. We hold that the evidence was sufficient to allow the jury to find — without resorting to speculation or conjecture — that appellant knew or had reason to believe that the four-wheelers were stolen.

Under our statute it is essential that the property be received with knowledge that it was stolen and with intent to deprive the owner thereof of his property. *Williams v. State*, 202 Ark. 951, 154 S.W.2d 809 (1941). Absolute knowledge that goods have been stolen is not necessary for a conviction of receiving stolen goods, but belief of the accused caused by facts and circumstances that goods have been stolen may be sufficient. *King v. State*, 194 Ark. 157, 106 S.W.2d 582 (1937). Because intent can rarely be proven by direct evidence, the factfinder is allowed to draw upon its common knowledge and experience to infer intent from the circumstances. *Diggs v. State*, 93 Ark. App. 332, 219 S.W.3d 654 (2005).

Both in her written statement to the police investigating the theft and in her testimony at trial, appellant stated that she knew that Brandon had no money or resources to purchase the four-wheelers that he brought to their residence. The testimony of Mr. Latham established that appellant was generally familiar with the four-wheelers and other equipment kept at the deer club and had recently ridden at least one of the four-wheelers at the deer club prior to the theft. Mr. Latham also explained to the jury that, in the course of appellant's contacting him about the stolen property, appellant made comments that she was angry with Brandon and wanted to seek revenge against him. Appellant also brought equipment, such as knives and hunting materials, to Mr. Latham that had been stolen from the deer club but not previously identified by Mr. Latham to appellant as missing from the deer club.

The trier of fact has a right to accept that part of the defendant's testimony it believes to be true and to reject that part it believes to be false. *Thomas v. State*, 266 Ark. 162, 583 S.W.2d 32 (1979). The trier of fact may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances. *Springston v. State*, 61 Ark. App. 36, 962 S.W.2d 836 (1998). A jury need not lay aside its common sense in evaluating the ordinary affairs of life, and it may infer a defendant's guilt from improbable explanations of incriminating conduct. *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999).

From these circumstances, the jury could infer that appellant knew or had reason to know that the four-wheelers were stolen. She was at the deer club just prior to the theft of equipment and four-wheelers with which she was familiar as to their use and location. She was in possession of the stolen property, riding and selling one four-wheeler to her ex-husband prior to it becoming public knowledge that the four-wheelers were stolen. Furthermore, she made statements in her alleged attempt to help the deprived owners locate their property that she wanted revenge on her husband whom she accused of committing the theft. Accordingly, there was sufficient evidence for the jury to find that appellant knew or had reason to know that the property at issue was stolen.

Affirmed.

GLADWIN and BIRD, JJ., agree.