Robert Earl THOMPSON  *v.*  STATE of Arkansas

CA CR 06-1014                                    262 S.W.3d 193

Court of Appeals of Arkansas
Opinion delivered September 12, 2007

*Sandra C. Bradshaw*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. A jury found appellant, Robert Earl Thompson, guilty of rape, two counts of second-degree sexual assault, and one count of sexual indecency with a child. On appeal, he only challenges the sufficiency of the evidence to support the rape conviction. Specifically, he argues that the State failed to prove that he was the victim's guardian, which was an element of the charge. We affirm, concluding that substantial evidence supported appellant's conviction.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and we will affirm a conviction if substantial evidence exists to support it. *Cummings v. State*, 353 Ark. 618, 110 S.W.3d 272 (2003). Appellant's rape conviction required proof that he engaged in sexual

intercourse or deviate sexual activity with another person who was less than eighteen years of age and that he was the victim's guardian. Ark. Code Ann. § 5-14-103(4)(a)(A)(i) (Supp. 2007). Our criminal statutes define "guardian" as "a parent, stepparent, legal guardian, legal custodian, foster parent, or any person who by virtue of a living arrangement is placed in an apparent position of power or authority over a minor." Ark. Code Ann. § 5-14-101(3) (Repl. 2006).

The criminal information charged appellant with committing a rape in July 2005. At trial, Henrietta Nelson testified that she had lived with appellant for approximately fifteen years and that they had four children together. Also living with them were two other children, including her daughter, the victim C.P., born January 21, 1989, who was not appellant's daughter. Nelson testified that appellant played the "[f]ather role" in the household in that he was the breadwinner. His name was on their residential lease with hers, and he kept numerous items at the residence, including a truck and a car, and they had purchased their last car together. She stated that both she and appellant paid the bills, such as clothing and Christmas presents for the children. She also stated that appellant would take the children for a ride in the country or go fishing. She further observed that if there was a medical emergency and she was unavailable, appellant would be the one to take the children to the hospital. She noted that on one occasion, C.P. had pain with her sickle-cell anemia and that appellant took C.P. to the hospital. She further testified, however, that appellant and C.P. did not communicate and had no relationship.

C.P. testified that she had always lived with her mother and that appellant had lived with her mother for about fifteen or sixteen years. She testified that she and appellant did not have much of a relationship and that they would not talk, though appellant would come into her room. She said that he would come in her room and "try to bribe me with money or whatever" so that "he can get onto me or he touching me on my breasts and in my clothes," and that she "really couldn't do nothing." She also said that appellant would have sexual intercourse with her and that it happened more than once, including in her room and her mother's room. She testified that appellant said to her that if she ever told "somebody about this situation, he'll kill me." She further testified that she told him that she "was going to tell somebody," and he replied that if she "was going to tell somebody, he was going to kill

me." Though she testified that he told her this after everything had already happened, she further testified that he had told her this before he did anything.

■ We conclude that there was substantial evidence that appellant was C.P.'s guardian who, by virtue of their living arrangement, was placed in an apparent position of power or authority over C.P. This was established by evidence that appellant lived in the same household as C.P. for most of her life and resided with her mother and C.P.'s half-siblings who were fathered by appellant, that he played the "father role" and paid bills and leased the residence in which they lived, and that he took C.P. to the hospital and would take the children on outings. Furthermore, appellant exhibited his power and authority over C.P. by his threats to kill her if she told. *See Cummings*, 363 Ark. at 639 n.5, 110 S.W.3d at 285 n.5 (finding as evidence of control the stepfather's directions to the minor on a sexually explicit videotape). Accordingly, we affirm appellant's conviction.

Affirmed.

PITTMAN, C.J., and MILLER, J., agree.