James Clifton MAINARD *v.* STATE of Arkansas

CA CR 07-823                                                        283 S.W.3d 627

Court of Appeals of Arkansas
Opinion delivered April 30, 2008

*William M. Pearson*, Franklin County Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

SARAH HEFFLEY, Judge. Appellant appeals his conviction for second-degree murder in the death of Darryl Miller. Appellant contends that (1) the trial court erred in denying his motion for directed verdict, and (2) the trial court erred in failing to adopt his proposed jury instruction regarding justification. We find no error and affirm.

On June 15, 2006, Amanda Miller, the victim's wife, visited appellant at his home and decided to spend the night. Amanda and appellant had known each other for approximately one year and had previously engaged in a sexual relationship during her marriage to the victim. In the early morning hours of June 16, Darryl Miller went to appellant's home and demanded to see his wife. Darryl and Amanda argued in appellant's bedroom, and Darryl forcibly removed Amanda's wedding ring from her hand. Appellant asked Darryl to leave, and when he did not do so, appellant turned off the lights in the bedroom and used his nine-millimeter pistol to fire five shots at Darryl. Darryl died at the scene.

On July 6, 2006, an information was filed charging appellant with first-degree murder. A jury trial was held on May 16–18, 2007. At trial, Amanda admitted that she had an extra-marital affair with appellant on two occasions prior to the murder. Amanda testified that on the night in question, she was awakened by the phone ringing, and then she heard a knock at the door. She testified that her husband came into the bedroom and ripped the covers off of her. He then took her wedding ring off of her finger

and pushed the left side of her face with his hand. She testified that appellant told her husband to leave, but she and her husband continued to argue. Amanda testified that the lights went out and she saw the flashes of the gun and heard the shots. She stated that her husband did not make any movement toward appellant before the shooting; that her husband had not threatened appellant; and that she saw no weapon in her husband's possession, although he did carry a pocketknife. She acknowledged that her husband had been physically abusive to her in the past and that appellant was aware of the abuse. She also noted that Darryl did not appear to be intoxicated at the time.

The State also presented the testimony of Ryan Ciampoli, the 911 operator who received a call from appellant after the shooting. Ciampoli testified that appellant stated, "I have just shot a man trying to break into my house." Dustin Bradshaw, an officer with the Ozark Police Department, testified that when he arrived on the scene, appellant told him, "I shot Darryl Miller because I was fearing for my life." Investigator David Warren testified that there were no guns, knives, or anything that could have been used as a weapon found around the victim or on his person. Finally, Dr. Charles Kokes testified that there was no alcohol found in the victim's system, but test results did show the presence of methamphetamine.

At the close of the State's case, appellant made a motion for directed verdict, arguing that the State had not met its burden of proof with respect to the elements of first-degree murder and that there had been nothing to indicate that the shooting was anything other than self-defense. The motion was denied.

Appellant testified that on the night in question, Darryl shoved his way into appellant's home, went to the back bedroom, and began slapping Amanda. Appellant stated that he thought Darryl was drunk and smelled alcohol on him. Appellant testified that he repeatedly told Darryl to leave, and when he did not do so, appellant turned off the bedroom light in an attempt to get Darryl to follow him to the front of the house. He testified that he picked up the gun after turning on the light and drew the gun on Darryl, thinking that he would leave then. Appellant testified that Darryl put his hand behind his back and moved slightly toward appellant, and at that point, appellant shot him. According to appellant, Darryl always carried a large hunting knife with him, and appellant feared for his safety and Amanda's safety. Appellant admitted he

did not see the knife that night, but stated he thought Darryl's untucked shirt could have hidden it.

At the close of the evidence, appellant renewed his motion for directed verdict, which was denied. Appellant also proffered a variation of AMI Crim. 2d 705, in which he inserted a justification defense based on Ark. Code Ann. § 5-2-607 (Repl. 2006).[1] The jury found appellant guilty of second-degree murder, and he was sentenced to eighteen years' imprisonment. Appellant then filed a timely notice of appeal to this court.

Although appellant placed his argument regarding the denial of his motion for directed verdict second in his brief, double jeopardy considerations require this court to review his directed-verdict argument first. *Lamb v. State*, 372 Ark. 277, 275 S.W.3d 144 (2008). A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Tomboli v. State*, 100 Ark. App. 355, 268 S.W.3d 918 (2007). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and we will affirm a conviction if substantial evidence exists to support it. *Thompson v. State*, 99 Ark. App. 422, 262 S.W.3d 193 (2007). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Eaton v. State*, 98 Ark. App. 39, 249 S.W.3d 812 (2007).

A person commits second-degree murder if the person knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-10-103(a)(1) (Repl. 2006). A person acts knowingly with respect to his conduct or the attendant circumstances when he "is aware that his . . . conduct is of that nature or that the attendant circumstances exist," and he acts knowingly with respect to the result of his conduct when "he . . . is aware that it is practically certain that his . . . conduct will cause the result." Ark.

---

[1] Arkansas Code Annotated section 5-2-607 provides: "A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is . . . imminently endangering the person's life or imminently about to victimize the person . . . from the continuation of a pattern of domestic abuse." Arkansas Code Annotated section 9-15-103 defines domestic abuse as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury, or assault between family or household members."

Code Ann. § 5-2-202(2)(A) & (B) (Repl. 2006). Our supreme court has defined "extreme indifference" as deliberate conduct that culminates in the death of another person. *Wyles v. State*, 368 Ark. 646, 249 S.W.3d 782 (2007).

■ Appellant argues that the State failed to provide sufficient evidence of second-degree murder because he was justified in defending himself and the State failed to negate this defense. In response, the State argues that appellant's sufficiency argument is not preserved because his directed verdict motion was based on first-degree murder, not second-degree murder, and therefore any argument as to the sufficiency of the evidence on the lesser-included offense has been waived. This court has held that, in order to preserve challenges to the sufficiency of the evidence supporting convictions for lesser-included offenses, defendants must address the lesser-included offenses either by name or by apprising the trial court of the elements of the lesser-included offenses questioned by their motions for directed verdict. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003). Appellant's directed verdict motion did not include the lesser-included offense of second-degree murder, either in name or in elements; accordingly, we find that appellant's argument is not preserved for appellate review.

For his second point on appeal, appellant argues that the trial court erred in failing to instruct the jury using his modified version of AMI Crim. 2d 705. Appellant's proffered instruction would have allowed the jury to consider justification as a defense if he "reasonably believed that Darryl Miller was imminently endangering Amanda Miller's life from the continuation of a pattern of domestic abuse." A trial court's ruling on whether to submit jury instructions will not be reversed absent an abuse of discretion. *Davis v. State*, 97 Ark. App. 6, 242 S.W.3d 630 (2006).

■ Our supreme court has held that a trial court should not use a non-model instruction unless there is a finding that the model instruction does not accurately reflect the law. *Ross v. State*, 96 Ark. App. 385, 242 S.W.3d 298 (2006). Moreover, the proffered instruction in this case is an incorrect statement of law. Appellant's proffered instruction inserts the language of Ark. Code Ann. § 5-2-607 into the model jury instruction regarding justification, but section 5-2-607 applies only to self-defense, not the protection of third parties, in the face of domestic abuse. Because

the proffered instruction is an incorrect statement of the law, the trial court's refusal to give the instruction was not an abuse of discretion.

Affirmed.

HART and VAUGHT, JJ., agree.