Anthony Antonio WARREN *v.* STATE of Arkansas

CA CR 07-942                                    286 S.W.3d 768

Court of Appeals of Arkansas
Opinion delivered September 10, 2008

*Mylissia Blankenship*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant Anthony Antonio Warren was convicted by a jury of Class Y felony commission of a terroristic act and first-degree battery, which is a Class B felony. The victim was Justin Honey, who was fifteen years old when the offenses were committed. Mr. Warren was twenty-two at that time. Mr. Warren was sentenced to twenty years in prison for the terroristic act, and ten years in prison and a fine of $15,000 for the first-degree battery conviction, with the prison sentences to run consecutively.

Mr. Warren now appeals from his convictions, raising three arguments for reversal. His first two arguments are challenges to the sufficiency of the evidence to support his convictions. Mr. Warren's remaining argument is that the trial court erred in failing to set aside his first-degree battery conviction because his two convictions arose out of the same act and violated the constitutional prohibition against double jeopardy. We find no error and affirm both convictions.

The State presented evidence that Justin Honey was driving his pickup truck at about 10:20 p.m. on August 8, 2006, through the intersection of Daugherty and State Streets in Newport, when

he was shot in the back of the head with a .38 caliber bullet. Justin's truck came to rest in a nearby field, and he was subsequently transported to a hospital where medical personnel saved his life. However, Justin continues to suffer from significant mental and physical disabilities as a result of the gunshot wound.

Bubba Hutchinson is friends with Justin Honey and testified about events that occurred on the night of the shooting. Bubba stated that he and Justin were parked in separate trucks in a parking lot in Newport and that Bubba's mother called at around 10:20 and told the boys to be home by 10:30. Justin planned to spend the night at Bubba's house. Bubba drove toward home with Justin following behind. Bubba drove through the intersection of Daugherty and State and saw people there that he did not know, and he thought he heard gunshots after proceeding through the stop sign. Bubba was almost home when he noticed that Justin's truck was no longer behind him. Bubba drove back to the intersection and found Justin's truck and realized that he had been shot.

Cody Knight testified that he drove through the intersection of Daugherty and State at about 9:45 or 10:00 on the night of the shooting. Cody saw Anthony Warren there with Samuel Curry, and he stopped and talked with them for a few minutes. Cody stated that he received a phone call about an hour later and was advised that Justin had been shot.

Angel Smith was present near the intersection at the time Justin was shot. She testified that she heard gunshots but that she did not see Mr. Warren fire a gun. However, this testimony was inconsistent with a prior video deposition, and that deposition was played to the jury as substantive evidence.

In her deposition, Angel testified that she saw Anthony Warren and Samuel Curry at the scene when Justin drove up to the intersection. Angel stated that Justin stopped and talked with Mr. Warren, and then with Mr. Curry. According to Angel, Mr. Warren and Mr. Curry then got into an argument and Justin proceeded to drive away. At that time, Mr. Warren fired three shots, "two in the air and then one going towards the stop sign, like towards the truck . . . pointed downward." Angel testified that three more shots were fired by someone named "Ced." Everyone at the scene ran, and Angel stated that Mr. Warren changed directions because he was initially running toward the police. After that, Angel heard Mr. Warren talking on his phone behind some apartments and he said, "I think the dude got shot."

Officer Patrick Weatherford got an emergency call that night at 10:23 and came to investigate. The officers blocked off the area surrounding the Daugherty/State intersection and searched for evidence. Officer Weatherford testified that the police found six shell casings in the vicinity of where Angel Smith indicated the shots had been fired. Three of the casings were .32 caliber, and three were nine millimeter. The bullet that struck Justin was .38 caliber but no .38 caliber shells were recovered at the scene. However, Officer Weatherford explained that this was not surprising because shell casings are not ejected from a .38 caliber revolver.

Arnice Kendall testified that she saw Mr. Warren near the intersection on the night of the shooting. She could not recall what time it was, but she stopped and spoke with Mr. Warren and he told her that he had shot somebody. Arnice stated that she called Mr. Warren on the phone a couple of seconds later, and Mr. Warren told her that he was joking. Arnice had not yet heard about the shooting when she talked with Mr. Warren, and she was unsure whether their conversation occurred before or after the shooting.

Rosemary Thomas testified that she was riding around near the area where the shooting occurred and thought that it was a little before 10:00. She stated that Mr. Warren stopped the vehicle she was in and said that he had just shot somebody. When Rosemary inquired if he was serious, Mr. Warren said, "no, I'm just playing." Rosemary later found out that there had been a real shooting that night.

Tanisha White testified that she is Mr. Warren's former girlfriend. She stated that she dropped him off on State Street near the crossroads on August 8, 2006, and was supposed to come back and pick him up at 9:00. However, Tanisha did not pick him up at that time but picked him up sometime later at the home of a girl named Chyna. Tanisha did not arrive until Mr. Warren had called her two or three times, and she also picked up Samuel Curry at the same time that night. According to cell phone records, the last call placed from Mr. Warren to Tanisha on that evening was at 10:37. Tanisha indicated that she picked Mr. Warren up after that last call.

Justin Honey testified that he remembered driving down the road and being shot that night. Justin stated that he did not remember stopping at the intersection of Daugherty and State and did not know why someone shot him. Justin testified that he did not know Mr. Warren and did not see him that night.

Chyna Slaughter testified for the defense. She stated that Mr. Warren came to her house to have supper at about 8:00 p.m. on August 8, 2006. Chyna stated that Mr. Warren left her house with his girlfriend, Tanisha, at about 9:00.

Christy Warren is appellant's sister and testified that she was driving from Batesville to Newport with a man named Cedric Alcorn when she received a call from her mother advising her about a shooting. Christy stated that she then called her brother and he told her that he was not in the area of the shooting when it occurred.

Mr. Warren testified on his own behalf, and he acknowledged that prior to the shooting he had been on State Street between 6:00 p.m. and 8:00 p.m. He stated that after that he went to Chyna's house to eat, and left there with Tanisha after 9:00. Samuel Curry was riding with them. According to Mr. Warren, they stopped at the site of a card game but did not go inside the residence, and then they went to a girl named Natia's house at 9:30. Mr. Warren maintained that he stayed there for the next two-and-a-half hours. Mr. Warren testified that he was not at the corner of Daugherty and State at the time of the shooting and that he had nothing to do with it. In rebuttal testimony, Officer Michael Scudder testified that during an interview appellant told the police that he was at Chyna's house when the shooting occurred and made no mention of being anywhere else.

Mr. Warren's first and second points on appeal are that there was insufficient evidence to support his conviction for committing a terroristic act and insufficient evidence to support his first-degree battery conviction. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and we will affirm a conviction if substantial evidence exists to support it. *Thompson v. State*, 99 Ark. App. 422, 262 S.W.3d 193 (2007). Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without mere speculation or conjecture. *Eaton v. State*, 98 Ark. App. 39, 249 S.W.3d 812 (2007).

In pertinent part, Arkansas Code Annotated section 5-13-310 (Repl. 2006) provides:

> (a) For the purpose of this section, a person commits a terroristic act if, while not in the commission of a lawful act, the person:

(1) Shoots at or in any manner projects an object with the purpose to cause:

(A) Injury to another person; or

(B) Damage to property at a conveyance that is being operated or that is occupied by another person[.]

. . . .

(b)(1) Any person who commits a terroristic act as defined in subsection (a) of this chapter is deemed guilty of a Class B felony.

(2) Any person who commits a terroristic act as defined in subsection (a) of this section is deemed guilty of a Class Y felony if the person with the purpose of causing physical injury to another person causes serious physical injury or death to any person.

In this appeal, Mr. Warren argues that there was insufficient evidence that he committed a terroristic act because the State failed to prove that he acted with the purpose to cause serious physical injury or damage to property. He contends that there was no testimony establishing that he was firing at Justin's truck, and that even if he had fired at the truck there was no testimony to establish that he had the requisite purpose required by the statute. Mr. Warren further argues that there was no evidence presented to show who fired the shot that injured Justin, which is required to enhance the penalty from a Class B felony to a Class Y felony. Finally, Mr. Warren contends that there was insufficient evidence to convict him as an accomplice because there was no testimony that he aided or acted in joint participation with the other shooter.

We hold that there was substantial evidence that Mr. Warren acted as the principal in committing a Class Y felony terroristic act. Intent is seldom proven by direct evidence, and often is inferred from the circumstances. *Alexander v. State*, 78 Ark. App. 56, 77 S.W.3d 544 (2002). Because of the difficulty in ascertaining a person's intent, a presumption exists that a person intends the natural and probable consequences of his acts. *Id.* In the present case there was evidence that Mr. Warren fired a shot in the direction of Justin's truck, and the natural and probable result of that conduct was serious injury or the death of the driver. The jury could reasonably infer from these circumstances that Mr. Warren

had the required purposeful intent to injure Justin. Moreover, there was substantial evidence that Mr. Warren was the person who caused serious physical injury to the victim, given the additional evidence that on the night of the offenses he told two people on separate occasions that he had shot a man. And as the State points out in its brief, Mr. Warren further incriminated himself by fleeing and evading the police immediately after he shot toward the victim's truck. *See Alexander, supra.*

Mr. Warren next argues that there was insufficient evidence to support his conviction for first-degree battery. A person commits battery in the first degree if the person causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-13-201(a)(3) (Repl. 2006). As argued in the previous point, Mr. Warren contends that the State failed to elicit any testimony as to his intent or purpose, and that the State failed to prove that he was the person who fired the shot that struck the victim. Mr. Warren again notes that there was testimony that another person fired shots that night.

We hold that there was substantial evidence that Mr. Warren committed first-degree battery against Justin Honey. There was sufficient evidence that he caused a serious physical injury in that he fired a shot at Justin's truck, evaded the responding police, and twice acknowledged shooting a man that night. And given the probable consequences of firing at an occupied moving vehicle, we have no hesitation in affirming the jury's finding that Mr. Warren's actions manifested an extreme indifference to the value of human life.

Mr. Warren's remaining argument is that his two convictions constituted double jeopardy because he was punished twice for the same act. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution is applicable in this context. In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court held:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not . . . . 'A single act may be an offense against two statutes; and if each statute requires proof of an additional fact

which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'

284 U.S. at 304. Mr. Warren contends that convictions for both a Class Y felony terroristic act and first-degree battery are prohibited because no additional facts are required to convict the accused of first-degree battery once the elements of a terroristic act have been satisfied. He thus urges reversal of his first-degree battery conviction.

When reviewing a denial of a motion to dismiss for violation of the Double Jeopardy Clause, typically a question of law, a de novo review is conducted. *Muhammad v. State*, 67 Ark. App. 262, 998 S.W.2d 763 (1999). On de novo review of this issue, we hold that there was no constitutional double-jeopardy violation.

■ Mr. Warren concedes that committing a terroristic act contains elements not required for a first-degree battery conviction, including shooting at a conveyance with the purpose to cause personal injury or property damage. Contrary to appellant's position, there is also an element of first-degree battery that goes beyond the requirements of obtaining a conviction for a Class Y terroristic act. Specifically, an element of first-degree battery, under which the jury was instructed, is acting under circumstances manifesting extreme indifference to the value of human life, an element not found in the terroristic act statute and which is something more than having the purpose of causing a physical injury as set forth in subsection (b)(2) of that statute. Because each of these offenses requires proof of an additional fact that the other does not, there was no constitutional violation under the *Blockburger* analysis.

■ We acknowledge that Mr. Warren also claims on appeal that his two convictions violated Arkansas Code Annotated section 5-1-110(a)(4) (Repl. 2006), which provides that a person cannot be convicted of more than one offense if the offenses differ only in that one offense is designed to prohibit a designated kind of conduct generally and the other offense to prohibit a specific instance of that conduct. However, Mr. Warren has failed to preserve this specific argument because at trial he made a constitutional double-jeopardy claim but no argument of any statutory violations. On appeal a party is bound by the scope and nature of the arguments raised at trial. *Vanesch v. State*, 343 Ark. 381, 37

S.W.3d 196 (2001). Moreover, the statute relied on by Mr. Warren is inapplicable because when comparing the elements of the two offenses it is evident that the conduct of committing a terroristic act is not a specific instance of conduct constituting first-degree battery. As previously stated, a terroristic act does not require the more offensive conduct of manifesting an extreme indifference to the value of human life.

Affirmed.

GLADWIN and BIRD, JJ., agree.